### THE MARCUS HOOK.

(Circuit Court of Appeals, Second Circuit. December 7, 1904.)

SALVAGE—AMOUNT OF AWARD—SERVICES RENDERED INSIDE DELAWARE BREAKWATER.

A salvage award of $600 to two tugs for timely and meritorious services rendered in towing to a place of safety a barge worth, with her cargo, above $30,000, which had been anchored inside the Old Delaware Breakwater, but was dragging her anchor and drifting toward the cape in a hurricane, *held* too small, and increased to $1,200, in view of the evidence, which showed that the service was attended with considerable danger to the rescuing tug, owing to the high seas, and that probably the barge would have gone ashore but for the assistance given by the tugs.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Salvage, §§ 80–83.

Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 128 Fed. 813.

Henry G. Ward, for appellant.

James Forrester, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. The testimony herein supports the finding of the District Judge "that the barge would eventually have gone

ashore on the cape if nothing had interfered to prevent." The only question in the case is whether the District Judge was justified in his conclusions that "the service was of a low order, and it did not amount to much more than towage," and "the danger to the barge was not as great as the libelant seeks to make out," because the Ivanhoe, the tug which had towed the barge to the breakwater, and was lying at anchor from a quarter to a half mile away, while "slow in getting her anchor up, * * * doubtless would have overtaken the barge before she actually touched the ground, which was half to three-fourths of a mile distant when the Juno [the rescuing tug] arrested the drift, and the barge was still at some distance from the shore when the Ivanhoe started to her aid."

The master of the rescuing tug testified that the master of the barge said to him: "If you hadn't caught us, we would have gone to the beach. I thank you very much, gentlemen, for the kind service you rendered." The master of libelant's tug Somers N. Smith, which also went to the assistance of the barge, testified as follows: "Q. Did you have any talk with the man in charge of the Marcus Hook? A. Yes, sir. Q. State what you said? A. I asked him if he wanted any assistance. He said yes; he would be on the point of that cape if he didn't take assistance." The mate of the Juno said: "I think the barge would have gone on the beach before the Ivanhoe could have got to it." No witnesses were called by claimant to contradict this testimony, and there is nothing to support the finding that the Ivanhoe would doubtless have overtaken the barge, except such inferences as may be drawn from the testimony of libelant's witnesses as to the conditions prevailing on the morning in question. The uncontradicted testimony as to these conditions was as follows: During the early morning of the day in question a hurricane of unusual force prevailed in the neighborhood of the breakwater. The superintendent of the Maritime Exchange, who has been stationed at the breakwater for some eight years, stated that it was the hardest and severest storm he had ever experienced. The wind was blowing at first northeast, with a velocity of about 84 miles, and later shifted to the westward, with a velocity of about 60 miles, an hour. At 8 o'clock in the morning the sea was running high, and several vessels in that locality were lost or suffered serious damage. At or about 4 o'clock in the morning of said day, said barge, by reason of the violence of the storm, began to drag her anchor, and at first drifted toward the shore, and later, when the wind shifted to the westward, at about half past 7, began to drift more rapidly toward the point of Cape Henlopen. In the opinion of the various disinterested witnesses employed at the Maritime Exchange Station and lighthouse on the breakwater, the barge would have gone on the beach inside the point of the cape unless timely assistance had been rendered. When in this condition she hoisted her ensign union down, and the steamtug Juno, which was drifting around with her anchor up, responded to the signal, got a hawser on to her, and tugged her, with her anchor down, into a place of safety. This service was difficult and dangerous, and was rendered at a risk of collision, by

reason of the severity of the storm and the height of the sea, which made it very difficult to keep the head of the tug into the wind. The Ivanhoe remained at anchor until after the Juno had undertaken to rescue the barge, and did not reach the barge until the Juno had been towing her for about half an hour, and had brought her from a position of positive danger to one of safety. The great preponderance of testimony was to the effect that the barge was not more than a quarter of a mile from a point where she would have grounded when the Juno took her in tow.

If the District Judge had seen and heard the witnesses, we might feel reluctant to disturb his finding and award, even though we might not have agreed with him therein. But as all the testimony was by deposition, and the foregoing statements are uncontradicted, we are forced to conclude from an examination of the whole record that the barge would probably have gone ashore except for the services of the Juno. As these services were attended with risk of damage to the Juno, for reasons stated above, and as the barge and cargo rescued were worth over $30,000, and the rescuing tug was worth $8,000, we think the award made by the District Court was insufficient, and should be doubled, in order to sufficiently reward the salvors for their meritorious services.

The decree of the District Court is modified, with costs, and the cause is remanded to said court with instructions to enter a decree in conformity with this opinion.