**ACF INDUSTRIES, Incorporated (Plaintiff), Appellant,**

v.

**The INDUSTRIAL COMMISSION OF MISSOURI, Donald Brown, and Division of Employment Security of Missouri (Defendants), Respondents.**

No. 29965.

St. Louis Court of Appeals.

Missouri.

Feb. 4, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 28, 1958.

Arnot L. Sheppard, Herbert E. Bryant, Wm. R. Gentry, St. Louis, for appellant.

George Schwartz, Jefferson City, for respondent Division of Employment Security.

Lloyd G. Poole, Jefferson City, for respondent Industrial Commission of Missouri.

ANDERSON, Judge.

This is an action for judicial review of a decision of the Industrial Commission of Missouri as provided for in Section 288.210. (All statutory references are to RSMo 1957 Supplement, V.A.M.S.) Claimant, Donald Brown, sought to recover unemployment compensation for five weeks immediately subsequent to January 7, 1957. The Commission's Deputy found that claimant was eligible for unemployment benefits in accordance with his claim.

The appeals tribunal for the Division of Employment Security affirmed. Appellant, ACF Industries, Incorporated, requested a review of said decision by the Industrial Commission. The latter denied said application, with the result that, under Section 288.200, the decision of the appeals tribunal is to be regarded as the decision of the Commission. Appellant then filed its petition for review in the Circuit Court. The Circuit Court affirmed.

Respondent Brown entered appellant's employment as an electrician at its plant at 2800 DeKalb Street in June, 1956. He was laid off on November 2, 1956.

During the time that Brown was employed by appellant the latter had an agreement with the International Brotherhood of Electrical Workers, Local No. 1. This contract was entered into on February 20, 1956, and related to its DeKalb Street plant. The agreement provided (Article II, Section 2):

"The Company recognizes the Union as the sole collective bargaining agency for all the employees at the plant as defined in this agreement with respect to wages, hours of work and other conditions of employment."

It was also provided (Article II, Section 3):

"All employees in the bargaining unit on the date of the execution of this Agreement shall, as a condition of employment, not later than thirty-one (31) days after the date hereof, acquire and maintain membership in the Union in good standing for the duration of this Agreement. All new employees shall, as a condition of employment, become members of the Union not later than thirty-one (31) days following the date of their employment or following the date of execution of this Agreement, whichever is the later, and thereafter shall maintain membership in the Union in good

standing for the duration of this Agreement."

At the time Brown was laid off he did not belong to the Union, but had paid his initiation fees.

Article IX, Section 3, of the Union contract provides:

"Cancellation of Seniority. The employee's seniority shall cease if:

\*      \*      \*      \*      \*      \*

"(4) If he does not report within five (5) work days after being called to work, unless he furnishes a reasonable excuse for failure to report. The call shall be sufficient, if it is made by mail, addressed to employee's last place of residence as registered with the company. Local committee to be furnished list of men to be recalled to service.

"When an employee whose seniority has been broken by any of the causes mentioned in the aforegoing paragraph of this Article, is again hired by the Company, he begins as a new employee."

It is provided in Article XXII, Section 1:

"Change of Address. All changes of address or telephone numbers must be reported to the Personnel Department at once."

Section 3, of Article XXII, reads as follows:

"Computation of time. For the purpose of computing the time within which any steps or action should be taken under this Agreement after notice of request by one party (or an employee) of another party (or an employee), the date of such notice or request is mailed shall control and the day following the mailing date shall be counted as the first day. In the event the last day any steps or action should be taken under this Agreement shall

fall on Saturday or Sunday or on one of the holidays named in paragraph (a), Section 1 of Article XVIII, then the time within which such step or action must be taken shall be extended to include the next regular business day. The United States Post Office postmark shall be conclusive evidence of the date of mailing. When provision is made herein for the giving of written notice or the making of written request of a specified number of days, the giving of such notice or the making of such request shall be timely if mailed and postmarked on the last day."

On January 4, 1957, appellant sent Brown a letter addressed to him at 141 East Loretta, Lemay 23, Missouri. This letter read as follows:

"Please report for work at the employment office Monday, January 7, 1957, at 8:00 a. m."

This letter was never returned to appellant by the postal authorities or anyone. On the same day the letter was mailed appellant dispatched a telegram by Western Union to Brown, also directed to 141 East Loretta, Lemay, Missouri. This telegram read as follows:

"Report for work at employment office Monday, January 7, 1957, at 8:00 a. m."

The telegram was signed "American Car and Foundry Company." On the same day the telegram was sent to Brown, Western Union, in a telegram directed to appellant, reported its inability to deliver the telegram to Brown. Said telegram read:

"Your telegram January 4, Donald Brown, 141 East Loretta, Lemay 23, Missouri, is undelivered. Mr. Brown has not been home for over a week, unable to say when will be back. If there is any question please call GA 1–4321

Station 122. (Signed) Western Union Telegraph Company."

At the time Brown was employed by the appellant he lived at 141 East Loretta, Lemay 23 (St. Louis), Missouri. He rented a room at this address. He was unmarried.

On November 12, 1956, Brown secured employment at the Mercury plant of the Ford Motor Company near Robertson, Missouri. He worked at this job until January 5, 1957, when he was laid off. During the period of his employment at the Mercury plant he rented a room at a rooming house in Robertson. About once a week he would go to the Lemay address for his mail and for clothes, etc. On January 5, the day he was laid off at the Mercury plant, he changed his abode to 2218 South Broadway. He did not thereafter call at the Lemay address for his mail or belongings until January 14, 1957. Prior to January 14, 1957, he did not notify appellant of the change in his address.

Brown testified that he did not notify the Post Office of the change of his address from 141 East Loretta, Lemay 23, Missouri, to 2218 South Broadway, until about a week after he made the move to the latter address. When he filed his claim for unemployment compensation on January 8, 1957, he gave as his address 141 East Loretta, St. Louis 23, Missouri. He stated that the last time he spent the night at the Lemay address was sometime around the end of December, 1956.

On January 14, 1957, Brown went to the Lemay address for his mail. When he arrived there he found the letter of January 4, 1957. On the same day (January 14, 1957), according to his testimony, he went to appellant's plant and made inquiry about his employment status. He was informed that his name had been removed from the seniority list and his job filled.

Irving Margol, appellant's employment manager, testified that Brown's visit was on January 17, and that his name had been

dropped from the company's rolls on January 14, 1957, for failure to answer the recall to work. He stated that: "according to our Union contract, which provides that an employee has five days to answer a recall, and since the five days had elapsed and he did not report by the 14th, he was then dropped from our rolls."

There is some question in the testimony about just what happened when Brown came to appellant's plant to discuss the matter of returning to work. Brown testified that he thought he talked to appellant's personnel representative Margol.

Mr. Margol stated that on January 17, 1957, Brown came into the office and that he talked to Brown personally. He testified:

"I told him if he could provide a statement of why he had failed to answer the recall due to illness or sufficient reason we would consider his case for reinstatement * * * he said he was out of town and let it go at that. * * * I told him if he could show me a reason for his being out of town due to an illness of his family or something like that why—

"Q. But he didn't give any? A. No, sir.

"Q. The only reason he had was that he was out of town, and that standing alone without anything further as to why he was out of town was not sufficient for you? A. That is correct, sir. * * * In the Union agreement between the employer and the employee and its representatives we have a paragraph which states that —it is actually Article 22, Section 1. It is entitled 'Change of Address'. It says: 'All changes of address and telephone numbers must ·be reported to the personnel department at once.' Since Mr. Brown did not give us any change of address we assumed that we mailed it to his last place of mailing where he wanted his mail delivered to

him, and since our letter was not returned, and since the Western Union indicated to us that he was still living there and merely was not at home at the time, we had no other recourse but to assume that the report of delivery was in the proper hands and that he would take the proper action."

Brown testified that on January 14, 1957, he went to appellant's plant as soon as he got the letter and inquired if the job was still open. He stated: "I got down there about noontime and they said I had already been dropped from the seniority list and the job was filled and so I let it go at that. * * * They called over and asked the electrician in charge, the foreman over there, and he said 'no openings', and the girl told me they couldn't do nothing. They said to keep your eye on the paper if you were still interested."

The appeals referee found:

"The Referee finds that the claimant did not fail without good cause to accept suitable work offered him by the employer. The language of the law with respect to disqualifications for refusing to accept work presupposes some positive action or positive failure on the part of the claimant. Before an individual can fail to accept an offer of work he must know of the offer. One cannot fail to accept something of which he has no knowledge. The fact that claimant may have been negligent in not seeing to it that mail addressed to him was brought to his attention cannot change the rule that an individual cannot refuse an offer of which he has no knowledge. The claimant had no knowledge of the employer's offer until January 14, 1957. As soon as he learned of the offer he reported to the employer's establishment but was told that he had already been 'dropped'. In other words, the offer had been withdrawn. The referee, accordingly, finds that the claimant did not fail without good cause to accept suitable work offered him di-

rectly by an employer by whom he was formerly employed."

Appellant contends that the court erred in affirming the award of the Industrial Commission for the reason that it appears from the evidence adduced that respondent Brown failed to accept suitable work offered him by appellant on January 4, 1957. Appellant relies upon the provisions of Section 288.050, the pertinent portions of which provide:

"Notwithstanding the other provisions of this law a claimant shall be disqualified for waiting week credit or benefits until after he has earned wages equal to ten times his weekly benefit amount if the deputy finds

\* \* \* \* \* \*

(2) That he failed without good cause \* \* \* to accept suitable work when offered him, either through the division or directly by an employer by whom the individual was formerly employed \* \* \*."

It is appellant's position that the mailing of the letter of January 4, 1957, addressed to Brown at 141 East Loretta Street—his last place of residence as registered with the company—constituted an offer of suitable work within the meaning of the Act in question, and that Brown's failure to accept same within five days thereafter disqualified him from receiving benefits under the Act. In support of its position, appellant relies on the provisions of Article IX, Section 3, of the Union contract, and contends that by virtue of said provision Brown, through his Union representatives, agreed that a recall to work made in the manner therein provided should be considered an offer of suitable work as contemplated by the statute, even though it was not actually received by Brown. To this we cannot agree.

Section 3 of Article IX of the Union contract deals only with a worker's seniority rights, i. e., his right to be recalled to work in preference to other former employees. It does not purport to deal with the worker's rights under the Employment Security Law, and we do not believe we are authorized to extend its scope to include such rights.

■ Under the statutory provision, before a claimant can be denied benefits there must be a finding of failure, without good cause, to accept work when *offered*. The word "offer" has a well known common law meaning when used in reference to contractual rights, and the General Assembly must have intended that it be considered in its technical sense. In law, one cannot accept an offer which has not been communicated to him. 17 C.J.S. Contracts § 38, p. 371; 12 Am.Jur., Contracts, page 524. In fact, a proposal does not amount to an offer in the law of contracts until brought to the knowledge of the offeree. In Vol. 2, Bouv. Law Dict., Rawle's Third Revision, p. 2399, it is said: "An offer, as an element of a contract, is a proposal to make a contract. It must be made by the person who is to make the promise, and it must be made to the person to whom the promise is made. It may be made either by words or by signs, either orally or in writing, and either personally or by a messenger; but in whatever way it is made, it is not in law an offer until it comes to the knowledge of the person to whom it is made; Langd. Contr. § 151; 6 H.L.Cas. 112."

■ The Employment Security Law is remedial in its nature, and the General Assembly has specifically directed that it be liberally construed to accomplish its objectives. § 288.020(2). One purpose of the statute being payment of benefits to persons involuntarily unemployed, it would seem that § 288.050(1) (2) should not be construed so as to disqualify a person from receiving benefits because he failed to accept an offer of which he had no knowledge. The most favorable construction rule requires us to construe the word "offer" in its technical sense. In the case at bar, Brown first learned of the offer on January 14, 1957. On that date he went to appel-

lant's place prepared to accept employment but was advised that since he had failed to avail himself of the offer according to its terms, the job had been filled.

It is our opinion that the finding of the Industrial Commission was correct. It follows that the judgment of the circuit court affirming the award of the Commission should be affirmed by this court, and it is so ordered.

MATTHES, Acting P. J., and CLEMENS, Special Judge, concur.