**The KROGER COMPANY, a corporation (Plaintiff), Appellant,**

**v.**

**INDUSTRIAL COMMISSION OF MISSOURI, DIVISION OF EMPLOYMENT SECURITY OF The DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS OF MISSOURI, et al. (Defendants), Respondents.**

No. 29970.

St. Louis Court of Appeals.

Missouri.

June 14, 1958.

Motion for Rehearing or to Transfer Cause to Supreme Court Denied July 10, 1958.

Robert W. Herr, St. Louis, Richard V. Runyan, Cincinnati, Ohio, for appellant.

Lloyd G. Poole, Jefferson City, for respondent Industrial Commission of Missouri.

George Schwartz, Jefferson City, for respondent Division of Employment Security.

Bartley &! Martin, John H. Martin, St. Louis, for certain respondents.

Wiley, Craig, Armbruster, Schmidt & Wilburn, Charles M. Schmidt, Earl B. Wilburn, St. Louis, for certain respondents.

SAMUEL A. DEW, Special Commissioner.

The appellant filed its petition in this cause in the Circuit Court of St. Louis, Missouri, for a judicial review of the findings, decision and awards made by the respondent Industrial Commission of Missouri in favor of the 190 individual respondents herein (sometimes referred to as the "claimants"), on their respective claims for unemployment compensation benefits. The benefits awarded were for unemployment compensation for one or more weeks during a strike against the appellant by certain of its employees in the St. Louis area. Included as a defendant and a respondent is the Division of Employment Security of the Department of Labor and Industrial Relations of Missouri. All questions of venue and of jurisdiction of the persons of the parties in this joint review and appeal have been waived. By their respective answers, respondents deny the charges of illegality of the findings, decision and awards and seek to have the same affirmed.

The facts developed by the evidence adduced at the hearing before the Appeals Tribunal were summarized and stipulated by the parties in the Circuit Court on the review as follows:

"The appellant operates a large number of retail food stores in various sections of the United States, including the St. Louis area, and also operates a number of warehouses and bakeries as an adjunct to and source of supply for its various retail stores. In September, 1955, appellant operated 140 retail stores in St. Louis and surrounding areas, 52 of these being located in the St. Louis metropolitan area, while the balance, numbering 88, were located in outstate Missouri and Illinois. The farthest distant of these outstate stores was 130 miles from St. Louis and the stores in the St. Louis area were all within a radius of 15 miles of the branch office. The operation of all these retail stores and their supervision were directed from the branch office located at 1311 South 39th Street, St. Louis, Missouri. At this same address was located the appellant's warehouse from which merchandise was furnished to such retail stores. The bakery operated by the appellant was located a few blocks away.

"Appellant employs about 300 workers in its bakery, these being represented either by Bakers' Union Local # 4, AFL, the Bakers' Union Local # 4—Auxiliary, AFL, or Biscuit and Cracker Workers' Union Local # 254, AFL; about 800 workers in its retail stores in the St. Louis metropolitan area who were represented either by Retail Store Employees' Union Local # 655 or Meatcutters' Union Local # 88, AFL; over 100 drivers and truck mechanics who are represented by Teamsters' Union Local # 610, AFL, and International Association of Machinists District # 9, AFL; and 28 maintenance mechanics, about 22 of whom work at the bakery and about 6 in the warehouse, who were represented by Firemen and Oilers' Union Local # 6, AFL. (Through oversight the agreed statement omitted the fact that appellant employs about 210 workers in its warehouse, and these are members of Retail Store Employees' Union Local # 655.)

"The evidence shows that 70% of all merchandise sold by the retail stores came from the warehouse and the bakery, the remainder coming from other sources. The store managers were supervised by a number of district managers whose offices were in a

portion of the building used as a warehouse. Store personnel were hired, on the recommendation of store managers, by the branch office Personnel Department. In cases of insubordination, dishonesty, fighting and disturbances, store managers had the right to discharge employees. The manager had authority to lay off an employee in cases of inefficiency, with approval of the Personnel Department or the district manager. With respect to the merchandise that came from sources other than the warehouse, the store manager was required, in most cases, to send orders for such merchandise to the warehouse and such orders were then placed by branch office personnel. All advertising of merchandise sold in the stores was placed by branch office personnel. Sales plans were given to the store managers in outline. It was the responsibility of the individual store manager to promote or merchandise the items in his store. Schedules of working hours of store employees were set by the store managers.

"As the result of a breakdown in negotiations over a new contract, a strike was called against the appellant by Firemen and Oilers' Union Local # 6 at appellant's bakery and warehouse in St. Louis, and directly involved about 20 members of such union. Members of Local # 6 were employed exclusively at the company's bakery and warehouse, and none in the retail stores. This was the only union which declared a strike against the appellant. Pickets were placed by Local # 6 at the bakery and warehouse on September 14, 1955, and this action caused an immediate cessation of operations at both the bakery and the warehouse, since appellant's employees at both those places, except district managers and office personnel, refused to cross the picket lines set up by Local # 6. Local # 6 also set up picket lines at a number of appellant's retail stores in St. Louis and St. Louis County on September 15 and September 16, 1955. Many of the store employees refused to cross such picket lines. They were subsequently held to be ineligible for benefits and are not now parties to this proceeding. On September 15, 1955, appellant announced, through newspaper ads run in place of its regular merchandise ads, that the retail stores would close out all perishable merchandise and afterward close 'due to a work stoppage in one section of our business.' On September 17, 1955, appellant closed all of its retail stores in St. Louis and St. Louis County, including fourteen of such stores at which no pickets had appeared up to that time. All of the St. Louis area stores and the stores in Wentzville, Belleville, East St. Louis and St. Charles were eventually picketed during the course of the strike, which ended November 15, 1955. Outstate stores in Missouri, except St. Charles, and all Illinois stores, except Belleville and East St. Louis, remained open for business throughout this period, receiving merchandise from sources other than the St. Louis warehouse.

"Subsequently about 377 of the store employees in this area, all of whom are members either of Retail Store Employees' Union Local # 655, or Meatcutters' Union Local # 88, filed claims for unemployment compensation benefits with the Division of Employment Security.

"The Appeals Tribunal of the Division held approximately 187 of these store employees to be ineligible for benefits and approximately 190 of them to be eligible for benefits. Those held ineligible were so disqualified either because, as the evidence established, they were participating in the aforesaid labor dispute by refusing to cross picket lines at the stores where they were employed, or because, as the evidence further established, they were members of a grade or class of workers, of which there were members employed at their store, some of whom refused to cross picket lines. Those held eligible, who are the individual respondents in this case, were held to be qualified because, as the evidence established, they were not participating, financing, or directly interested in the labor dispute, did not refuse to cross picket lines (there having been no picket lines at the

stores where they were employed prior to the closing thereof), and they worked as long as work was available for them; also, because, as the evidence established, they were not members of a grade or class of workers, of which there were members employed at their store, some of whom refused to cross picket lines or were otherwise participating, financing or directly interested in the dispute.

"In holding the individual respondents here to be eligible, the Appeals Tribunal stated that each of the retail stores of the appellant in this area was a separate establishment or premise within the meaning of the law. It is over this interpretation by the Appeals Tribunal that the controversy brought before this Court arises.

"The appellant in due time filed with the Industrial Commission its applications for review of such decisions of the Appeals Tribunal, and on November 21, 1956, the Industrial Commission entered its orders affirming the decisions of the Appeals Tribunal and denying appellant's applications for review. Thereafter and within the proper time the appellant filed its petition for judicial review in the Circuit Court of the City of St. Louis, Missouri, as aforementioned. After answers had been filed by all the respondents, the cause was argued to the Circuit Court on April 29, 1957, and taken as submitted by said Court on June 7, 1957 (Tr. 22). On July 29, 1957, the Court entered its order and judgment as aforesaid, affirming the findings and awards of the Industrial Commission (Tr. 23). On August 7, 1957, appellant filed its motion for new trial (Tr. 23–25), which motion was overruled by the Court on August 7, 1957 (Tr. 25), and by its notice of appeal duly filed on August 15, 1957 (Tr. 26), appellant prosecutes this appeal from the order and judgment of the Circuit Court."

The section of the statute which is the basis of the controversy in this appeal is Section 288.040 RSMo 1949, Subsection 4, as amended by the Laws of Mo. 1951, page 574, V.A.M.S. The pertinent parts of the section read as follows:

"4. (1) A claimant shall be ineligible for waiting week credit or benefits for any week for which the deputy finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute in the factory, establishment or other premises in which he is or was last employed; * * * and provided further, that if in any case separate branches of work which are commonly conducted as separate businesses at separate premises are conducted in separate departments of the same premises, each such department shall for the purpose of this subsection be deemed to be a separate factory, establishment or other premise; and provided further, that this subsection shall not apply if it is shown to the satisfaction of the deputy that

"(a) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(b) He does not belong to a grade or class of workers of which, immediately preceding the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute."

Appellant does not contend that the present claimants are ineligible because of any personal and physical participation in the labor dispute or financially supported it or were directly interested in it. In fact, as stated, it was agreed that no pickets were placed at the stores where the claimants herein were employed until after the stores were closed by appellant, and these claimants continued to work at their jobs as long as the work there was available to them. However, appellant maintains that it conducted a functionally integrated business operation within the St. Louis area consisting of a branch office, a bakery, a warehouse, and a number of retail grocery stores in geographical proximity of each other;

that, under the theory of "functional integrality" the words "factory, establishment or other premises," appearing in Section 288.040, subsection 4(1), which purport to fix the place of a stoppage of work due to a labor dispute, participation in which will disqualify a claimant for unemployment compensation with respect thereto, should be construed to mean one single integrated "establishment"; that a labor dispute at any one of such units is a labor dispute in the whole "establishment" or combined system of operation in the area; and that if so, then under Subsection 4(1) (b) the individual respondents herein are ineligible as claimants because certain grocery clerks and meatcutters of the same grade or class in certain of appellant's other stores in the area *did* participate in the dispute by refusing to cross the picket lines at such stores. Appellant strongly asserts that the respondent Industrial Commission of Missouri was in error in ruling otherwise and holding that each of the retail stores was a separate "establishment" or premise within the proper construction of the statute, and that the Circuit Court erred in affirming such ruling.

▆▆▆ The respondents all argue that the issue at hand is an ultimate question of fact for the Commission to determine, and that under the law its decision respecting it cannot be disturbed on review because there was substantial evidence to support it and because the Commission, upon the whole record, could reasonably have reached its conclusion. Const.1945, Article V, Section 22, V.A.M.S.; Meyer v. Industrial Commission of Missouri, 240 Mo.App. 1022, 223 S.W.2d 835. We do not so consider the nature of the issue. Where, as here, the facts are agreed upon, the question "of the award to be entered is one of law in which the conclusions of the Compensation Commission will not be binding upon the appellate court." Horrell v. Chase Hotel, Mo.App., 174 S.W.2d 881, 886; Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 183 S.W.2d 77, 80. An interpretation of a stat-ute by an administrative body does not preclude, restrict or control the right of a complete review of such issue by the appellate court.

▆▆▆ All of the parties agree that the issue presents a question of first impression in Missouri. Many rulings are cited from foreign jurisdictions by both parties. But they are of limited value here because of different local statutory provisions, different terminology, different context, different factual situations involved, or because of difference in the issue for determination. We are enjoined at the outset that Section 288.030 requires a liberal construction of the Employment Security Law. This court recently cited and reaffirmed that statutory requirement. ACF Industries, Inc., v. Industrial Commission of Missouri, Mo.App., 309 S.W.2d 676, 680. On the other hand, the provisions of such a remedial act which limit or except certain claimants from its benefits must receive a strict construction. A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095.

We agree with the respondents that the significant word of the phrase "at the factory, establishment or other premises in which he (the claimant) is or was last employed" is the word "premises," it being the purpose of such phrase to fix the place of the work stoppage and labor dispute on which the claim is predicated. That the words "factory, establishment" signify the place, location or situs of the claimant's employment is manifest from the words immediately following, "or other premises in which he is or was last employed." Ford Motor Co. v. Unemployment Compensation Commission, 191 Va. 812, 63 S.E.2d 28, 33. In fact, appellant, in its reply brief, states that the issue is "were any of those participating fellow employees 'employed at the premises at which the stoppage occurs' * * * ?"

The appellant would extend the "premises" where claimant "is or was last employed" to include every unit of appel-

lant's operations in the St. Louis area, whether it be called factory, bakery, establishment or retail store, and argues that if there be a labor dispute and consequent stoppage in any one of them, there is, ipso facto, a labor dispute and labor stoppage in all of them for the purposes of the Unemployment Security Law, so that, if any of the coemployees of the claimants of the same grade or class participated in the dispute at any of the stores other than where the claimants worked, then Subsection 4(1) (b) would render such claimants ineligible.

According to the agreed facts there was no labor dispute at the retail stores where the claimants were employed. The facts did not show such interdependence between and among the stores and other units of appellant's business as to constitute any one store an integral part of one "establishment" in the sense of the statute or that would justify the application of the theory of "functional integrality." Therefore, no coemployees of the claimants of the same grade or class could have participated in a labor dispute at such places as is required for forfeiture under the language of subsection 4(1) (b), "employed at the premises at which the stoppage occurs." The "stoppage," as above stated, refers to that occurring at the premises where the claimants were employed (Subsection 4(1)), and on which the claims are based. The last clause of Subsection 4(1)(b), fixing the place of participation in the dispute by coemployees of the claimants, which would render the claimants ineligible, uses only the word "premises" in the phrase "employed at the premises at which the stoppage occurs," and omits the words "factory or establishment." The first paragraph of said Subsection 4(1) recognizes the existence of separate units of such a business as appellant's by providing that when separate branches of a business generally conducted "at separate premises," but are conducted in separate departments of "the same premises, each such department shall * * * be deemed to be a separate factory * * * or other premise * *."

■ Applying our construction of the statute to the agreed facts, we believe the individual respondents (claimants) were not ineligible under the law to make claim for compensation for unemployment following the closing of the stores where they were employed, although there was a strike of the Firemen and Oilers' Union Local No. 6 at appellant's bakery and warehouse and pickets were placed there and at certain other retail stores. This, because neither did the claimants, nor any of their coemployees of the same place of employment and of the same grade or class participate in any labor dispute at such places of employment, nor financially support such dispute, nor were they directly interested therein.

The decision of the Circuit Court affirming the decision, findings and awards of the Industrial Commission of Missouri should be affirmed. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DEW, Special Commissioner, is hereby adopted as the opinion of the Court. The judgment and decree of the Circuit Court are affirmed.

RUDDY, P. J., ANDERSON, J., and JAMES D. CLEMENS, Special Judge, concur.