**IOWA MALLEABLE IRON COMPANY,**
Appellee,

v.

**IOWA EMPLOYMENT SECURITY COMMISSION, Appellant,**
and
**Ivan E. Cline, Sr., Defendant-Appellee.**

No. 54735.

Supreme Court of Iowa.

March 16, 1972.

Walter F. Maley, Gen. Counsel Iowa Employment Security Commission, and Lorne M. Boylan, Des Moines, for appellant.

Scott Jordan, and T. A. Louden, Fairfield, for appellee.

RAWLINGS, Justice.

Iowa Employment Security Commission (commission) appeals from trial court's decision on appeal there by Iowa Malleable Iron Company (company) overruling commission's award of unemployment compensation to Ivan E. Cline, Sr. (claimant). We reverse.

Company's plant was "shut down" from June 29 to August 4, 1969, for annual repairs, maintenance work and employee vacations. Claimant, having worked for company more than two years, received vacation pay for one week after the shutdown. A notice was posted on the plant bulletin board to the effect any employee interested in shutdown work could apply with applicants to be called on a seniority basis. Claimant did not apply. July 15th he secured temporary employment with Rockwell Standard Company. August 4 claimant returned to work with company, was absent for personal reasons from the 5th to 18th, then again worked through the 20th. Claimant quit company August 21st to accept regular employment with Rockwell, but October 31, 1969, was there laid off. He thereupon filed the presently involved unemployment compensation claim for the period from November 2 until December 1, 1969, when recalled by Rockwell.

As best we can determine it is conceded claimant left his employment with company August 21, 1969, without good cause attributable to company.

Commission found: (1) claimant's initial employment with company, commencing May 15, 1967, was terminated by the June 29, 1969, plant shutdown; (2) a new employment period was commenced August 4, lasting through August 20, 1969; (3) claimant's June 29, 1969, company initiated layoff constituted a nondisqualifying termination of employment and allowed wage credits based upon his employment with company prior thereto; (4) claimant's August 21, 1969, termination of the new or second period of employment was for a disqualifying cause and denied benefits based upon his wage credits from August 4 through August 20, 1969. In other words, commission found there were two separate periods of employment.

On appeal from commission the trial court, in reversing, held claimant's employment with company was for one uninterrupted period subsequent to May 18, 1967 (sic), and by quitting August 21, 1969, he forfeited all company related wage credits.

On appeal here commission contends trial court erred in holding claimant was still employed by company during the plant "shutdown" period; commission's decision was without substantial support in the record; and substituting its judgment for that of commission.

I. This court has repeatedly held, with regard to Chapter 96, (1) it was enacted to ease the burden of involuntary unemployment by establishment of reserves for use of persons unemployed through no fault of their own, (2) no common law or contractual relationship is involved, (3) though remedial in character the Act must be construed in light of those facts peculiar to each given case. See The Code 1966, Section 96.2; Needham Packing Co. v. Iowa Employment Sec. Comm., 255 Iowa 437, 440–441, 123 N.W.2d 1; Moulton v. Employment Sec. Comm., 239 Iowa 1161,

1172, 34 N.W.2d 211; Moorman Mfg. Co. v. Iowa Unemployment Compensation Comm., 230 Iowa 123, 129–131, 296 N.W. 791.

■ II. It is also understood, fact findings by commission are binding on the courts if supported by substantial and competent evidence. See Code §§ 96.6(9) (10), 96.7(6), par. c; Wilson Trailer Co. v. Iowa Employment Sec. Comm., 168 N.W. 2d 771, 775 (Iowa); accord Davenport Water Company v. Iowa State Commerce Comm., 190 N.W.2d 583, 591–592 (Iowa).

■ III. On the other hand law issues are determinable by the judiciary alone. See Davenport Water Company v. Iowa State Commerce Comm., *supra*, 190 N.W. 2d at 592.

IV. The first question to be resolved is whether, as a result of the company retooling and vacation plant "shutdown", claimant was unemployed for no disqualifiable reason from June 29 to August 4, 1969. This instantly presents a law issue.

In material part Code § 96.5 provides:

"An individual shall be disqualified for benefits:

"1. If he has left his work voluntarily without good cause attributable to his employer, if so found by the commission. * * *

"g. However, an individual who has left his employment without good cause attributable to his employer, * * * *shall forfeit only those credits acquired by him during that period of employment that was quit.*" (Emphasis supplied.)

As heretofore disclosed claimant received vacation pay for one week following the plant shutdown but thereafter received no compensation from company until reemployed August 4th when normal plant operations were resumed.

Relevant here is § 96.5(7), par. a which declares:

"When an employer makes a payment or becomes obligated to make a payment to an individual for vacation pay, or for vacation pay allowance, or as pay in lieu of vacation, such payment or amount shall be deemed 'wages' as defined in subsection 13 of section 96.19, and shall be applied as provided in paragraph 'c' hereof."

At this point § 96.19(10), par. a also comes into play. It states: "An individual shall be deemed 'totally unemployed' in any week with respect to which no wages are payable to him and during which he performs no services."

■ Upon the basis of the foregoing we now hold the legislature intended: First, a person unemployed during any plant shutdown for retooling or employee vacation leave is ineligible for compensation benefits only to the extent an employer pays or is obligated to pay that person for any vacation leave attributable to the shutdown; Second, subject to specified qualifying statutory provisions, a person not entitled to vacation pay during any part or all of a plant shutdown period is prima facie deemed to be then involuntarily unemployed. See Code § 96.19(10), par. a, quoted above; Moulton v. Employment Sec. Comm., 239 Iowa 1161, 1170, 34 N.W. 2d 211; Stover v. Deere, 461 S.W.2d 393 (Ark.); Geremia v. Administrator, Unemployment Comp. Act, 146 Conn. 264, 150 A. 2d 203; Schettino v. Administrator, Unemployment Comp. Act, 138 Conn. 253, 83 A. 2d 217; American Bridge Co. v. Review Board of Indiana, Etc., 121 Ind.App. 576, 98 N.E.2d 193; General Electric Co. v. Director of Div. of Emp. Sec., 349 Mass. 207, 207 N.E.2d 289; Ankerson v. Michigan Employment Security Comm., 376 Mich. 126, 136 N.W.2d 5; Carter v. Board of Review Under Okl. Emp. Sec. Act, 323 P.2d 362 (Okl.); Marinelli v. Board of Review of Dept. of Emp. Sec., 99 R.I. 716, 210 A.2d 599; International Union of Elec., Etc. v. Texas Emp. Comm., 346 S. W.2d 649 (Tex.Civ.App.). See also Annot. 30 A.L.R.2d 366, 376.

V. There is, however, one notable exception to the second rule or standard set forth in Division IV, *supra*. In that regard an individual is disqualified for unemployment benefits, "If the commission finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the commission or to accept suitable work when offered him, * * * if any". Code § 96.5(3).

VI. Mindful of the foregoing we must now determine whether company offered claimant suitable · work during the 1969 plant shutdown.

As aforesaid, company posted a notice on the plant bulletin board prior to the shutdown which stated, in substance, "X number of employees are needed for shutdown work, anyone interested can sign and they will be called according to seniority." As best we can determine claimant had qualifying seniority, and suitability of work is not in question.

But was work *offered* claimant by company? The record is barren of any showing that such notice was ever brought to claimant's attention, or that he had requisite knowledge thereof.

The word "offered" as used in Code § 96.5(3), quoted above, has a relatively well established legal meaning. Surely the legislature intended nothing less.

Black's Law Dictionary, (rev. 4th ed.), page 1233, says "offer" means: "To bring to or before; to present for acceptance or rejection; to hold out or proffer; to make a proposal to; to exhibit something that may be taken or received or not. Morrison v. Springer, 15 Iowa 304, 346; People v. Ah Fook, 62 Cal. 493, 494".

■ Furthermore, in the juristic field it is understood one cannot be deemed to have declined an offer never communicated to him. See ACF Industries v. Industrial Commission, 309 S.W.2d 676, 680 (Mo.); 1 Corbin on Contracts, §§ 11, 56, 59; Restatement, Contracts, § 23; 17 Am.Jur., Contracts, § 31; 17 C.J.S. Contracts § 38.

See generally Johnston v. Chrysler Corporation, 54 Del. 279, 178 A.2d 459; Jewell v. Stetser, 54 Del. 1, 174 A.2d 31; Annot. 35 A.L.R.3d 1129, 165 A.L.R. 1382, 158 A. L.R. 396.

Company argues other employees filed application for "shutdown" work, many of whom were accepted, and resultantly claimant must inferentially be deemed to have received notice of the posted offer. We are not so persauded.

■ Inherent in Commission's order was a finding that claimant did not refuse an offer by company of suitable shutdown employment. We now hold there was sufficient substantive evidence to support such a holding by Commission and trial court erred in concluding otherwise.

■ II. Pursuing this matter one step more, company apparently attempts, at least in part, to support its position by reference to a labor union contract never presented in evidence, therefore not before us. ·

■ In that regard the record reveals only that the labor contract permitted annual vacation plant shutdowns. Under existing circumstances this is neither relevant nor determinative.

On point is American Bridge Co. v. Review Board of Indiana, Etc., *supra,* where the court said at 98 N.E.2d 195:

"One of the express purposes of the Indiana Employment Security Act is to provide for employees who are unemployed through no fault of their own. There is nothing within the provisions of the union contract which would give rise, even inferentially, to a reasonable construction that employees who were not eligible for vacations were affected in any way by the designation of the vacation period for eligible employees. Certainly, the employees who were not eligible for vacation have not by any reasonable interpretation to be placed upon the terms of * * * the bargaining agreement consented to any action

by the company which would permit the designation of a period of vacation without pay for them."

Confining ourselves to the factual situation in the case before us we adopt the above view and accordingly so hold. This conclusion is further supported by citations in Division IV hereof.

VIII. Notably claimant's right to unemployment benefits during the 1969 plant shutdown is not here directly in issue.

■ Rather, the basic questions are, (1) were there two periods of employment by claimant with company, i. e., from May 15, 1967 to June 29, 1969, and again from August 4 through August 20, 1969, or (2) was there one such uninterrupted period from May 15, 1967, through August 20, 1969?

If the former, then under Code § 96.-5(1), par. g heretofore quoted, claimant forfeited only those wage credits acquired by him under the second period of employment. If the latter, then claimant lost all such credits accumulated during employment with company.

Commission found there were two employment periods and accordingly held for claimant.

Trial court, in reversing, found commission's holding was not supported by substantial and competent evidence.

Trial court erred in holding adverse to commission on both the supportive facts and law issues presented.

This case is therefore reversed and remanded with instructions that trial court's order be promptly set aside and an order or decree consistent with this opinion be thereupon entered.

Reversed and remanded with instructions.

All Justices concur except HARRIS, J., who takes no part.