**BROWN-BROCKMEYER CO., Employer-Appellee, v. HOLMES, Employee-Appellant, BOARD OF REVIEW, BUREAU OF UNEMPLOYMENT COMPENSATION, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1990. Decided January 4, 1949.

A. K. Meck, Dayton, for employer-appellee.

Hugh S. Jenkins, Atty. Genl., John M. Woy, Asst. Atty. Genl., Roland B. Lee, Asst. Atty. Genl., Columbus, for Board of Review, defendant-appellant.

208

**OPINION**

By MILLER, J.

This is a law appeal from a judgment of the Court of Common Pleas for Montgomery County, holding an order of the Board of Review of the Bureau of Unemployment Compensation to be unreasonable and unlawful. The order of the Board was one allowing unemployment compensation to Fred Holmes, one of the appellants. The facts are not in dispute and were found by the Board of Review to be as follows:

Claimant worked for the Brown-Brockmeyer Company of Dayton, Ohio, from April 15, 1945, to June 15, 1946, when he quit to go to California where he obtained work with the Salisbury Motor Corporation in Pomona, California, on August 14, 1946, and worked until December 5, 1946, when he was laid off for lack of work. He filed an initial interstate claim for benefits on December 9, 1946, in California. He was out of employment for four weeks. On December 26, 1946, the Brown-Brockmeyer Company sent claimant a letter offering him employment in Dayton, Ohio. Claimant refused to accept this offer because he was over 2000 miles away, had a place to live there and was only temporarily unemployed.

The only error assigned is that the judgment is contrary to law.

For a determination of the rights of this claimant it becomes necessary to construe §1346-6-e-(3) GC, which provides:

"e. No individual otherwise qualified to receive benefits shall lose the right to benefits by reason of a refusal to accept new work if:
* * *

(3) The work is at an unreasonable distance from his residence. having regard to the character of the work he has been accustomed to do, and travel to the place of work involves expenses substantially greater than that required for his former work, unless the expense be provided for."

The only argument over this section is the meaning of the word "residence." Does the word refer to his former residence in Dayton, Ohio, or to his new residence in California? We think it refers to the state in which the present unemployment arose. The claimant clearly had a right to voluntarily leave the employment of Brown-Brockmeyer, but in so doing, under §1345-6-d-(9), he lost all his right to benefits under the act until he was again "re-employed in employment subject to the unemployment act or the Unemployment Compensation Act of another state and has earnings equal to at least four times his weekly benefit amount."

The record discloses the disqualification was removed as he became re-employed in California and his earnings surpassed the minimum amount enumerated in the statute. He therefore became restored to all of the rights and privileges provided under the Act. He now becomes a California employee, residing in California.

In the case of **Brown-Brockmeyer v. Roach, 148 Oh St 511,** it was held that one voluntarily quitting his employment became subject to certain penalties but that it did not preclude an award. Syllabus 1 provides:

"The provisions of §1345-6, subdivisions b and c, GC, in effect July 26, 1944 (120 Ohio Laws, 666 at 682), did not preclude an award of unemployment compensation to an employee who voluntarily quit his employment without just cause but subjected him to the prescribed penalties of an increased waiting period and decreased benefits."

Under the facts presented in this case the claimant's residence being in California the Board of Review properly held that the work offered to him at Dayton, Ohio, was at an unreasonable distance from his residence. Therefore, under §1345-6-e-(3) GC he lost none of his rights because of his refusal to accept this new work.

Counsel for the appellee urges, however, that should we give this interpretation to the Unemployment Compensation Act, the same would be in conflict with the Fifth Amendment to the Constitution of the United States and also in conflict with **Section 26 of Article II of the Constitution of Ohio.** It is urged that Brown-Brockmeyer's account with the Unemployment Bureau cannot lawfully be charged with benefits to a claimant who refuses to return to work for the company; that there must be some causal connection between loss of employment with the Brown-Brockmeyer Company and the claimant.

Counsel for the appellee cites the case of **State, ex rel. v. Creamer, 85 Oh St 349.** At page 396 it is stated:

"The court states one of the premises on which it proceeds as follows:
'When our Constitutions were adopted, it was the law of the land that no man who was without fault or negligence would be held liable for damages for injuries sustained by another'."

Standing alone, this quotation appears to support the appellee's contention. However, the court continuing notes an exception to this general rule which we think has application to the case at bar. This exception provides:

"But that rule was not of universal application. At common law one may sustain such relation to the inception of an undertaking that he will be held liable for negligence in the progress of the enterprise, even though he have no part or connection with the negligent act itself which caused the injury. Such for instance, as where the owner of property contracts with an independent contractor to do work which though entirely lawful, yet has inherent probabilities of harm if negligently performed. The position in the line of causation which employers sustain in modern industrial pursuits is of course the basic fact on which employers' liability law rests."

It was on the wages earned from the Brown-Brockmeyer Company that claimant's rate of compensation was determined. The company is thus in the line of causation on which it was required to pay contributions to the unemployment compensation fund. It is on this basis that the Legislature requires benefits to be paid in the reverse order of employment. Inverse order of payment of benefits would seem to be just and equitable, and it would not be fair to charge the last employer with all the payments made for benefits when the employee had been employed by two or more employers during the base period. The amount of benefits is determined by the amount of earnings in the most productive calendar quarter of the base year. It is thus that former employers may get into the causal chain of employment.

In the case of Charles C. Stewart Machine Co. v. Davis, 301 U. S. 548, the Supreme Court of the United States held that the federal law was not unconstitutional under the Fifth Amendment to the Constitution of the United States.

In .the case of Pennsylvania v. Perkins, 21 Atl. (2d) 45, affirmed by 314 U. S. 586 the United States Supreme Court again upheld the constitutionality of the Pennslyvania Unemployment Compensation Act. The Alabama law was declared not to be unconstitutional by the Supreme Court of the United States in the case of Carmichael v. Southern Coal & Coke Co., 301 U. S. 495. In California Commission v. Los. Angeles Down Town Shopping News Corp., 150 Pac. (2d) 186, the court said:

"The legislation constitutes a valid exercise of the state's taxing power and its objects are not limited to the raising of revenue. It is a remedial statute and as such must be liberally construed for the purpose of its objects."

In the case of Zelney, etc., v. Murphy, et al., 387 Ill., 492, 56 N. E. (2d) 754, it is said:

"It is well settled that the legislature may, in the exercise of the police power of the state, enact those measures which have a tendency to promote the public welfare of society * * *. In the exercise of this power the legislature may enact laws regulating, restraining or prohibiting anything harmful to the welfare of the people, even though such regulation, restraint or prohibition interferes with the liberty or property of an individual."

An examination of the Ohio Constitution discloses that there is a direct constitutional authority for the enactment of an unemployment compensation law. **Article II, Section 34** provides:

"Laws may be · passed fixing and regulating the hours of labor, establishing a minimum wage and providing for the comfort, health, safety and general welfare of all employees; and no other provisions of the Constitution shall impair or limit this power."

The constitutionality of the act was challenged in **State of Ohio v. Iden, 71 Oh Ap 65**, the first paragraph of the syllabus is as follows:

"1. The Unemployment Compensation Act (§§1345-1 to 1346-5, **inclusive, GC**), is a valid and constitutional legislative measure enacted in the exercise of the state's taxing power, and its validity is determined by constitutional principles applicable to state taxation."

Sec. 1345-19 GC provides that the administrator shall co-operate with federal, state and other agencies. Sec. 1345-34 GC provides that the act is enacted as a part of a national plan of unemployment compensation and social security and for the purpose of assisting in the stabilization of employment conditions; that the imposition of the contributions imposed upon Ohio industry alone without a corresponding tax imposed upon all industry in the United States would defeat the purpose of the act; that therefore, the act shall remain in effect only so long as the excise tax upon employers of eight or more persons, which is imposed by Title II of the Social Security Act enacted by the Congress of the United States, shall remain and be in effect and operative.

We are therefore of the opinion that the trial court erred in overruling the decision of the Board of Review, which is ordered affirmed.

WISEMAN, PJ, and HORNBECK, J, concur.

## ON APPLICATION FOR REHEARING

No. 1990. Decided January 19, 1949.

By THE COURT:
Application for rehearing is denied.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.