FRIGIDAIRE DIVISION, Appellant, v. BOARD OF REVIEW, BUREAU OF UNEMPLOYMENT COMPENSATION et, Appellees.

Common Pleas Court, Montgomery County.

No. 100794.   Decided February 16, 1950.

Cowden, Pfarrer & Crew, Dayton, for appellant.
Herbert S. Duffy, Atty. Genl., Madison C. Perkins, Asst. Atty. Genl., Columbus, for Board of Review.

## OPINION

By MILLS, J.

This cause came on for consideration of the motion of the attorney general, appearing for the Board of Review of the Bureau of Unemployment Compensation, one of the appellees herein, and moves the court for an order dismissing the attempted appeal herein for the reason that the notice of appeal filed by appellant, Frigidaire Division, General Motors Corporation, fails to set forth the decision appealed from as required by law, and refers to **Zier v. Bureau of Unemployment Compensation,** 151 Oh St, 123, 38 O. O. 573. Judge Matthias, in his decision therein, seemed to follow **Kinsman v. Evatt,** 145 Oh St, 52, 30 O. O. 279, **Dayton Rental v. Evatt,** 145 Oh St, 215, 30 O. O. 447, and **American Restaurant & Lunch Co. v. Glander,** 147 Oh St, 147, 34 O. O. 8.

Sec. 1346-4 GC pertinent to appeal is as follows:

"Such appeal shall be taken by the filing by appellant of a notice of appeal with the clerk of such court and with the board of review. Such notice of appeal shall set forth

"(1) The decision appealed from and the errors therein complained of.

"(2) Proof of the filing of such notice with the board of review shall be filed with the clerk of such court.

"(3) All other interested parties before the board of review or the referee shall be made appellees.

"(4) The appellant shall serve notice of the appeal upon all appellees by registered mail or actual delivery to his last known post office address unless such notice is waived."

The appellant has complied with two, three and four and the question before the court is to determine what the legislature meant when they said "set forth." Appellant claims that the following complies with the words "set forth":

"Frigidaire Division, General Motors Corporation, Appellant, hereby gives notice of appeal to the Common Pleas Court of Montgomery County, Ohio, from the decision of the Board of Review, Bureau of Unemployment Compensation, State of Ohio, in re Claim of Elmer C. Coldiron, Acme, West Virginia, Appeals Docket No. 61566, Date of mailing June 14, 1949, affirming decision of referee dated January 7, 1948.

"Appellant says that the decision of the Board of Review is erroneous and against the just rights of this appellant in the following respects,"

and then names the various errors, five in number.

The tax cases referred to by Judge Matthias in his decision covered appeals in tax cases and not cases involving unemployment compensation. Sec. 5611 GC, refers to appeals from the tax commissioner, says:

"The notice of such appeal shall set forth or shall have attached thereto and incorporated therein by reference, a true copy of the notice sent by the commissioner to the tax payer of the final determination complained of, and shall also specify the error or errors therein complained of."

This is a different statute covering a different subject. Judge Matthias was referring to something else; he was referring to the fact that the appellant failed to set forth the

specific errors that the board of review was guilty of. In the instant case, appellant here has set forth the case appealed from, being 61566, involving Elmer C. Coldiron, of Acme, West Virginia, the date of mailing June 14, 1949, affirming the decision of the referee dated January 7, 1948, which shows it is the decision of the Board of Review he was appealing from, and the file of the Board of Review filed with the clerk of Common Pleas Court is a certified transcript of the record and proceedings pertaining to the decision complained of and the evidence considered by the Board of Review, all of which advises the court reviewing the case of what transpired at the hearing and every step taken from the time the man left the employment of the Frigidaire Corporation to the date of the hearing in Common Pleas Court.

It is the opinion of this court that if the statute meant to copy the decision from which the appeal is made it would have said so, either copy it word for word in the notice of appeal, or else copy it and refer to it as Exhibit A. In the case before Judge Matthias the appellant did not comply with all four provisions of §1346-4 GC, in that the appellant filed the following notice of appeal in the Court of Common Pleas of Cuyahoga County:

"The undersigned claimant hereby gives notice of appeal from the decision of the board of review denying the right to compensation, in accordance with his right to appeal under §1346-4 GC,"

thus failing to do several things that would apprise the court of a single ground or what decision he referred to. In the instant case the board of review, the Common Pleas Court, the employe, everyone, is given notice, referring to the proper case number and the final decision, complying with the law. A copy of the decision was filed by the Board of Review in the Common Pleas Court. What would be the object of having that several paged decision copied in an appeal when the original decision, or a copy, would be filed and was filed in this case by the Board of Review as required by law, together with all the exhibits and transcript of the evidence. It would only encumber the record. In looking to the intent of the legislature, the court cannot conceive that the legislature would require appellant to do a vain thing and thus further encumber the record. Everything is before the court that is necessary for the court to use to determine this action if the parties will appear.

It is the opinion of the court, therefore, that the motion to dismiss the appeal should be overruled.

## ON TRANSCRIPT OF EVIDENCE

Common Pleas Court, Montgomery County.

No. 100794.   Decided March 8, 1950.

### OPINION

By MILLS, J.

This cause comes on to be heard upon the transcript of evidence, exhibits, findings and the opinions of the Board of Review and the record of the proceedings pertaining to this action on an appeal from the decision of the Board of Review of the Bureau of Unemployment Compensation allowing Elmer C. Coldiron, one of the appellees in this case, benefits under the unemployment compensation statutes, §1345-1 to §1346-5 GC, and the extensive arguments of counsel for appellant and appellees.

The record shows that Elmer C. Coldiron, claimant, was first employed by Frigidaire Division, General Motors Corporation, Dayton, Ohio, on April 4, 1944, and continued in such employment except for a short lay off period in 1945, until September 30, 1946. The record is plain that on September 30, 1946 claimant voluntarily quit his work with Frigidaire Division, without notice, and without just cause, after having refused a job assignment, and it is undisputed that he quit without just cause on September 30, 1946.

The record shows that when he left the Frigidaire Division there was a job he could do similar to the one he had been doing, which was inspection work, had he wanted to remain at Frigidaire Division.

Coldiron went to Colorado where he worked picking up beets for the United States Government Farm Extension Service at Loveland, Colorado, where he was employed during the period from October 28, 1946 to November 6, 1946. He quit that job because a heavy snow prevented continuation of the work. There is no evidence in the record to show claimant's earnings totalled $84.00, or any other amount, which would be four times the weekly benefit amount.

On November 26, 1946, claimant, at Corbin, Kentucky, filed an interstate claim for unemployment benefits. On December 26, 1946, after being notified that claimant had filed a claim for benefits, the employer, Frigidaire Division, wrote to claim-

ant stating, among other things, that his employment experience with them indicated he would be fitted for jobs then available.

Claimant says he answered this letter, wanting to know 'what the nature of the work was but he never received any reply. A witness for appellant testified that he never replied to the letter that was written to him, and that they had similar work which he had been accustomed to do when previously employed there for him to come to had he returned to Dayton.

The Board of Review, in affirming the referee's decision of January 7, 1948 allowing compensation to the claimant, wrote an opinion setting forth the reasons why they arrived at their opinion. This is part of the record, and was an interpretation of §1345-6 GC.

However, one member of the Board of Review, John W. Wiper, dissented and filed his dissenting opinion.

The court has carefully read both the decision of the referee, which was affirmed by a majority of the Board of Review allowing the compensation, and the dissenting opinion, which dissenting opinion sets forth all the facts relative to this case and cites case law of the State of Ohio giving reasons why the claimant's application for unemployment compensation should be disallowed. This court is in full accord with the dissenting opinion.

The following is a copy of the dissenting opinion:

"I dissent from the opinion and decision of the majority in this cause.

"The instant original claim for benefits was filed on November 25, 1946, §1345-6-d(9) GC at such time provided as follows:

"d. Notwithstanding the provisions of subsection (a) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual * * *

"(9) voluntarily quit his work without just cause. Disqualification under this subsection shall continue for the full period of unemployment next ensuing after he has left his work voluntarily without just cause and until such individual has become reemployed and has earnings equal to at least four times his weekly benefit amount."

"The original claim being filed on the aforesaid date, the base period thereof pursuant to the provisions of §1345-1-o GC extends from July 1, 1945 to June 30, 1946. The quarter of

the highest earnings in said base period is the quarter ending September 30, 1945, wherein the claimant received wages of $704.52. This sum, in accordance with §1345-8-b GC, calls for a weekly benefit amount of $21.00. General Motors Corporation, Frigidaire Division, is the sole base period employer.

"The claimant quit the aforesaid employment without notice on September 30, 1946. Subsequent thereto, the majority finds that claimant worked between October 28, 1946 and November 6, 1946, in the state of Colorado. They make no findings as to his earnings from such work but for the purposes of their decision, it is assumed that he earned less than four times the weekly benefit amount. A letter was mailed to claimant's Colorado employer concerning claimant's earnings there and the following reply was received, to-wit:

'Loveland, Colorado
July 26, 1948

'Replying to the above I am unable to locate this man in our files. If he worked here he probably was laid off about November 6, due to snowstorm.'

"The majority necessarily finds that the extent of his earnings in such work is immaterial in view of their finding that he was separated from such work by reason of lack of work. The majority decision also, in effect, finds that claimant voluntarily quit his work with the General Motors Corporation without just cause.

"The issue is therefore presented as to whether the disqualification arising out of a voluntary quitting of work without just cause is removed or discontinued by the mere securing of another job and losing such job for some non-disqualifying reason without earning therein four times the weekly benefit amount. In the opinion of the writer, a finding that the disqualification provided by the statute is so removed or discontinued, is wholly in derogation of the specific provisions of §1345-6-d(9) GC, which subsection was added to existing §1345-6-d GC and became a part of the Ohio law on September 5, 1945. Prior to September 5, 1945, voluntary quits and discharges were covered by §1345-6-b GC and operated as extenders of the waiting period and reducers of the maximum number of times weekly benefits were payable. With the adoption of §1345-6-d(9) GC and the deletion of the provisions relative to voluntary quits from §1345-6-b GC, voluntary quits without just cause no longer affect extent of waiting period or the number of weeks of benefits potentially payable but operate as complete disqualifiers until certain specific conditions have been complied with.

"By the clear and unambiguous provisions of §1345-6-d(9)

GC, the legislature has provided that the disqualification arising out of a voluntary quitting of work shall continue until the claimant has done two separate and distinct things, namely, become re-employed and has earned an amount equal to four times the weekly benefit amount. It is to be noted here that by the specific terms of the statute, the disqualification is to continue not only for the duration of the period of unemployment next ensuing after such a quit, but until he has become reemployed and has earnings therein equal to at least four times the weekly benefit amount. The two separate requirements for the removing or discontinuing of the disqualification are joined by the conjunction "and." It is also clear from the statute that disqualification begins with the voluntary quitting of work, without just cause, as the statute specifically provides that the disqualification shall continue for the full period of unemployment next ensuing, et cetera. The words 'next ensuing' certainly refer to the unemployment beginning with the voluntary quitting of work. Pursuant to the express language of the statute the disqualification attaches immediately upon the voluntary quitting of work without just cause.

"The majority by its decision, holds, in reality, that a claimant must do only one of the things prescribed by the legislature, namely, become re-employed. This decision completely disregards the second requirement or qualification imposed by the legislature, to wit, the necessity of the claimant earning in his re-employment a sum equal to at least four times the weekly benefit amount before the disqualification is discontinued or removed. Such an interpretation simply drops out of the statute a requirement factor which the legislature of the state of Ohio has seen fit to insert. This amounts to legislating, which is not the function of this board.

"If the legislature had intended that the disqualification arising out of the voluntary quit without just cause should discontinue upon the securing by the individual of another job, it would have said so. It certainly knew how to so provide, as clearly shown by the term of §1345-6-(d) GC in relation to other subsections thereof. Attention is directed to the terms of §1345-6-(d) GC in relation to subsection (7) thereof. Subsection (7), standing alone, provides 'quit work to marry or because of marital obligation.' The general provisions of §1345-6-d GC are to be read as part of subsection (7) and in substance provide that the disqualification for quitting work to marry shall continue only for the duration of the period of unemployment following such a quit. Here, clearly, the disqualification is discontinued or removed

by the fulfilling of one factor only, namely, becoming re-employed. The majority, in looking to claimant's last separation from work only and allowing the claim when they find that he was laid off therefrom for lack of work, ignores the preceding voluntary quit without just cause and, in effect, removes or discontinues the disqualification arising therefrom upon the individual becoming reemployed. The majority, in effect, applies the same disqualification and means of removal or discontinuance thereof to a case involving a voluntary quitting of work without just cause under §1345-6-d-(9) GC as is provided for the removal or discontinuance of a disqualification under §1345-6-d-(7) GC aforesaid. This is done in spite of the fact that the provisions of §1345-6-d-(7) GC and §1345-6-d-(9) GC are dissimilar, and the fact that the latter subsection imposes another requirement in addition to becoming reemployed, namely, the necessity of earning four times the weekly benefit amount in such re-employment before the disqualification is discontinued or removed.

"Further, the legislature if it had intended that the disqualification arising out of a voluntary quitting of work without just cause was to terminate or discontinue upon the claimant becoming re-employed, could have readily said so by the simple process of placing a period after the word, to wit, 're-employed' in subsection §1345-6-d-(9) GC and stopping there. Also, if the legislature had so intended, it could have omitted the entire second sentence of §1345-6-d-(9) GC so that d-(9) would have followed the exact pattern of §1345-6-d-(7) GC, supra, and have read, to-wit '(9) voluntarily quitting his work without just cause,' thus making the provisions of §1345-6-d GC apply to both subsections (7) and (9).

"The majority decision in looking only to the last separation from work, in effect, limits the disqualification to the duration of the period of unemployment following a voluntary quitting of work and refers in part to §1345-6-d GC.— The provisions of §1345-6-d GC, however, are general, while the provisions of §1345-6-d-(9) GC are special. Clearly, under such circumstances, the special provisions of the statute with reference to a specific subject matter, are controlling over a general statutory provision covering other subjects as well as the specific subject matter. In the case of Acme Engineering Co., appellant v. Jones, Administrator, Bureau of Unemployment Compensation, appellee, 150 Oh St, 423, 38 O. O. 294, the Supreme Court of Ohio at page 431 of the opinion, clearly stated the law on this point, to wit:

'It is the general rule of law in statutory construction that when there are two statutory provisions covering the same

subject matter, one of which is general and the other special, the special statutory provisions for a specific case is to be construed as an exception to general provisions which might otherwise include the particular case.

'This court has followed that general rule which is not only buttressed by authority but is sound in reason and logic. In **State, ex rel. Steller v. Zangerle, Aud., 100 Oh St 414, 126 N. E. 413,** it is said:

" 'A special statute covering a particular subject matter must be read as an exception to a statute covering the same and other subject in general terms.' "

'In **State, ex rel, Elliott Co. v. Connar, Supt., 123 Oh St, 310,— N. E., 200** the first paragraph of the syllabus reads:

" 'Special statutory provisions for particular cases operate as exceptions to general provisions which might otherwise include the particular cases and such cases are governed by the special provisions.' "

"Further, the legislature has eliminated any question in this matter by specifically providing in subsection (9) of §1345-6-d GC, the particular disqualification applicable for voluntarily quitting work without just cause.

"It is also to be noted that the provisions of §1345-6-d GC and the provisions of §1345-6-d-(1) GC are dissimilar as to the period of disqualification. This Board has ruled many times in labor dispute cases, that the provisions of §1345-6-d-(1) GC as to the duration of the disqualification, are controlling over the provisions of §1345-6-d GC, thus giving effect to the aforesaid well established rule that special provisions govern general provisions. In the instant cause, however, the majority has, in effect, found the general provisions controlling over the special provisions of the statute.

"The issue presented in this cause has been before the Ohio courts in three cases, namely, The Selby Shoe Co., appellant v. William F. Carr, appellee, Common Pleas Court of Scioto County; Frank J. Collopy, Administrator of the Bureau of Unemployment Compensation, appellant v. Board of Review, et al, Common Pleas Court, Warren County, and **Brown-Brock-meyer Co.,** employer-appellee v. **Fred Holmes,** employee-appellant, Court of Appeals for Montgomery County (54 Abs 207). In two of the aforesaid cases, the instant issue was directly before the court, and in the other, indirectly, in that the claimant therein had actually earned more than four times his weekly benefit amount in his re-employment after voluntarily quitting his work without just cause in connection therewith.

"In the case of The Selby Shoe Co. v. Carr, supra, the claimant had voluntarily quit his regular employment as a shoe

worker, without just cause and shortly thereafter, secured employment as a taxi driver, where he worked only five days, earning $16.61, before being laid off for lack of work. The Referee hearing the cause, in his decision looked only to claimant's separation from work as a cab driver and allowed the claim. The employer's application to institute further appeal from such Referee's decision was disallowed by a majority of the Board of Review, the writer voting to allow such application. The cause was appealed to the Common Pleas Court of Scioto County which court reversed the decision of the Referee and the aforesaid order of the Board and found that the decision complained of was 'unlawful, unreasonable and against the manifest weight of the evidence.' No further appeal was taken from the decision of the Common Pleas Court.

"The case of Frank J. Collopy, Administrator v. Board of Review, et al, supra, is similar in principle to the aforesaid Carr case and again a Common Pleas Court reversed the decision of the Referee, wherein a prior quitting had been ignored, stating in its opinion, as follows, to wit:

'This day this matter came on for hearing on appeal from a decision of a Referee of the Board of Reviaw, Bureau of Unemployment Compensation, in the claim of Sherman E. Wilson. The record shows the following facts: Sherman Ernest Wilson, claimant, was an employee of the Inter State System of Dayton, Ohio, from September 8, 1945, to March 8, 1947, on which latter date he quit his employment because of lack of transportation. Thereafter he was employed by Carl W. Brown, of Harveysburg, Ohio, who was not covered by the Unemployment Compensation. He was also employed by Ray Morgan, Waynesville, Ohio, but the record does not show whether or not this was covered employment.

'From the facts, and the law as I interpret it, the claimant has not earned four times his potential weekly benefit amount in covered employment, since he voluntarily separated from the Inter State System without just cause in connection with his work and is not entitled to a valid claim in accordance with subsection 9 of §1345 GC.

'I am therefore of the opinion that the decision of the Referee of the Board of Review should be reversed and an entry may be drawn accordingly.'

"In the case of Brown-Brockmeyer Co., v. Holmes, supra, while it could be argued that the issue was not directly before the court by reason of the fact that the claimant therein had actually earned more than four times his weekly benefit amount in his re-employment subsequent to his quitting his Ohio em-

ployment, the court nevertheless in its opinion, made the following cogent statement on the subject matter, to wit:

"* * * The claimant clearly has a right to voluntarily leave the employment of Brown-Brockmeyer, but in so doing, under §1345-6-d-(9) GC, he lost all his right to benefits under the act until he was again re-employed in employment subject to the unemployment act or the Unemployment Compensation Act of another state and has earnings equal to at least four times his weekly benefit amount.

'The record discloses the disqualification was removed as he became re-employed in California and his earnings surpassed the minimum amount enumerated in the statute. He therefore became restored to all of the rights and privileges provided under the Act. * * *.'

"The decision of the majority, in the opinion of the writer, is not only contrary to the provisions of the applicable statute, but also nullifies a portion thereof. Such decision is also contrary to the Ohio court cases on the subject matter.—The claim should be disallowed.

(Signed)   Don W. Wiper
Member, Board of Review"

Date of Mailing: June 14, 1949

Since the instant case was heard before the Board of Review, the Supreme Court, in the case of **Brown-Brockmeyer Company v. Holmes,** reported in **152 Oh St, 411, 40 O. O.** 405, has expressed not only in the syllabi of the case, but in their reasoning all the law necessary to determine this action. Any other interpretation of §1345-6 to 9 GC, inclusive, in the opinion of this court would permit irresponsible employees to sever connections with their employers, move to a distant state, and under pretense of employment for a short time, dissipate the fund set aside for laborers who honestly and diligently work to earn their daily bread, and leave nothing in the fund for the purposes for which this law was passed, which was for unfortunate, honest workmen to bridge over a short period of unemployment and be able to support themselves and their families without appealing to charity. This law was made for the honest, diligent and responsible, and should be so interpreted to protect him; the law is very plain, as was the intent of the legislature.

This court can set forth no more sound reasoning than is set forth in the dissenting opinion of member of the Board of Review, Mr. Don W. Wiper, and the argument, reasoning and law contained in the opinion of Judge Hart in the Brown-Brockmeyer case cited above. Applying the law as enunciated

in the decisions of the courts of Ohio and in the applicable sections of the General Code to the facts of this case, it must be concluded that the claimant herein is not entitled to benefits under the Unemployment Compensation Act.

For the reasons given this court finds that the decision of the majority of the Board of Review from which this appeal was taken is unlawful and unreasonable, and accordingly should be and it is reversed and vacated.

Counsel will prepare and present the appropriate entry.

## FRIGIDAIRE DIVISION, Plaintiff-Appellee, v. BOARD OF REVIEW, BUREAU OF UNEMPLOYMENT COMPENSATION, STATE et, Defendant-Appellant.

Ohio Appeals, Second District, Montgomery County.

No. 2109.  Decided August 21, 1950.

Cowden, Pfarrer & Crew, Dayton, for plaintiff-appellee.
Herbert S. Duffy, Atty. Genl., James B. Dooley, Asst. Atty. Genl., Columbus, for defendant-appellant.

### OPINION

By THE COURT:

Submitted on motion of plaintiff-appellee for an order dismissing the appeal on the ground that the appellant failed to file a brief and assignments of error within the time prescribed by Rule VII.  It appears from the record that neither the brief nor the assignments of error were filed within fifty (50) days after filing the notice of appeal.  In the case of **State, ex rel. Merrill v. Moore, 83 Oh Ap 525, 82 N. E. (2d) 323,** this Court held:

"This Court has consistently ruled that where the appellant fails to file assignments of error and brief within fifty (50) days after the filing of notice of intention to appeal, a motion to dismiss the appeal will be sustained."

Motion to dismiss the appeal is hereby sustained.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.