GEORGE H. JEWELL, JR., Appellant, v. ALBERT STETSER, WILLIAM BODENSTEDT, HOMER H. PEPPER, WILBERT RAWLEY, being the Chairman and Associate Commissioners of the Unemployment Compensation Commission of the State of Delaware, and CHRYSLER CORPORATION, a corporation of the State of Delaware, Appellees.

*(September* 14, 1961.)

LYNCH, J., sitting.

*John M. Bader* (of Bader and Biggs) for Appellant.
*Donald W. Booker* (of Coxe, Booker, Walls and Cobin) and *Jacob Kreshtool* for Unemployment Compensation Commission.

*Joseph H. Geoghegan* (of Berl, Potter and Anderson) for Chrysler Corporation.

Superior Court for New Castle County, No. 182, Civil Action, 1961.

LYNCH, Judge:

The appellant (herein referred to as Claimant), was first employed by Chrysler Corporation (herein referred to as Em-

ployer), on October 24, 1957. He was laid off on September 23, 1960,—part of a mass lay-off for lack of work. A letter, dated October 14, 1960 and addressed to Claimant, was sent to him by Employer by certified mail to his last known address in Newark, Delaware. The letter directed Claimant to "report to the employment office for interview at 9:30 A.M. Tuesday, October 18, 1960".

Delivery of the certified letter was made at Claimant's last known address but his father refused to accept delivery on October 15, 1960. Claimant did not report, as directed, on October 18, 1960 in any part of the Employer's plant on that day. Claimant was reporting to his Employer's premises every week during this period of time in connection with his claim for SUB benefits. It appears that he was there on October 25, 1960 and talked with a Mr. Bundy, a Chrysler employee, and that the matter of his failing to report on October 18 was discussed. Mr. Bundy then learned that Claimant had never received the letter of October 14, 1960 which called him for an interview on October 18.

It was established that Mr. Bundy was the Employment Supervisor, Delaware Defense Plant, Chrysler Corporation, and that he was in charge of and responsible for hiring, lay off, recall, transferring of employees at the Chrysler Defense Plant; it also was established that he had no authority or jurisdiction at the Chrysler Assembly Plant on October 18, 1960 and could not have hired Claimant, pursuant to the notice of October 14, 1960 sent by certified mail.

It appears from the letter of October 14, 1960 that Claimant was recalled to report at the employment office of the Assembly Plant for interview. A Mr. Gilmore was the Employment Supervisor there, with authority and jurisdiction to employ Claimant and the others to whom had been sent the notice of October 14, 1960, recalling them for interview for work in the Assembly Plant.

Claimant's attorney contends that the communication of October 14, 1960 "was not a notice of a definite existing job" but only advised him to report for an interview; he also notes that Mr. Gilmore testified on remand that customarily (including the instant case) notices to report for interview were sent to more people, by approximately 10%, than there were job openings for, and that this was intended to take care of cases where people failed to get the notice or failed to report. It is claimed in Claimant's behalf that Mr. Gilmore admitted that the notice sent to Claimant would be fairly characterized as "a recall for interview for work", and from the general tenor of Mr. Gilmore's testimony it appears that the matter of notifying people to come in for interviews was something in the nature of a shotgun proposition, rather than an invitation to certain individuals to report for specified jobs.

For example, says Claimant's attorney, Mr. Gilmore indicated that if more people than they expected reported in response to letters, they would probably be able to put them all to work by stretching it out just a little bit. The way he put it was, "I would be able to hire them all within a reasonable amount of time."

Claimant's attorney further notes that in response to the question immediately following the last statement, Mr. Gilmore said, "We were hiring almost daily up until November 23" and, says Claimant's attorney, it is reasonably clear, therefore, that Claimant could have been put to work on one of the occasions when he came in to report in connection with the SUB benefits.

Claimant's father testified before the Unemployment Compensation Commission in his behalf, and said the October 14, 1960 communication, sent by certified mail, had been brought to the Jewell home by the Post Office service and that, thinking it was intended for him, he refused to accept delivery of the October 14, 1960 communication.

The Appeals' Referee set out the basic contentions of the parties:—

"The employer contends that it had fulfilled its obligation to the claimant when a recall registered letter was forwarded to the claimant.

"The claimant contends that he did not receive the registered letter and did not know that a registered letter had been forwarded to him."

The legal conclusions of the Appeals' Referee were:

1. Chrysler fulfilled its obligations (to notify Claimant of the availability of work) by sending a registered letter to Claimant.

2. But since Claimant did not receive the certified mail letter he could not be held to have refused the job offer.

3. Consequently, he was eligible to receive available benefits during his period of unemployment.

The Referee's decision was appealed to the Unemployment Compensation Commission. Testimony was again adduced (Tr. 21/27) and it was the same except it was made to appear that Claimant was not "aware of the method of recall" (Tr. 23/24) used by Chrysler since he had not been laid off prior to this instance.

The Commission's decision (Tr. 29/31) embraced the same basic contentions (Tr. 29) of the parties and adopted (Tr. 30) the Appeals Referee's Findings of Fact. The Commission, however, reversed the Appeals Referee's Decision, as a matter of law, holding—

"It is the opinion of the Commission that the employer had taken reasonable steps to notify the employee of a recall to work in a manner normally employed by the company and at the address held out by the employee as being his place of

residence. Having done everything reasonable as to notice of recall and in fact having delivered the letter to the place of residence listed by the employee the burden shifts to the employee to accept such notice and the employee's father was his agent in respect to the receiving of such notice. The recent tendency as to laws involving service of parties by registered or certified mail indicates that the mere sending to the address held out by the person *at* his residence is sufficient for purposes of notice whether accepted at that address or refused. The Commission therefore is of the opinion that the claimant did refuse a recall to work."

On appeal to this Court Claimant asked the decision of the Unemployment Compensation Commission be reversed because—

1. The Commission erred as a matter of law in holding that Chrysler had taken reasonable steps to notify Claimant of the recall to work by its holding that Claimant's father was his agent in connection with the receipt of the certified mail, notifying Claimant he was recalled for work.

2. That the Referee's Findings of Fact, which the Commission adopted, "show conclusively that" Claimant "did not refuse to accept an offer of work."

3. The Commission's holding (Conclusion of Law) was not supported by the evidence.

Following a careful and detailed examination of the Transcript of the case as presented to the Appeals' Referee and to the Unemployment Compensation Commission, I have concluded that the appeal should be dismissed and the Commission's determination affirmed.

After an examination of the exhibits, I hold that the letter of October 14, 1960 had all the necessary elements of an "offer of work" within the meaning of 19 *Del. C.* § 3315 (3) and so I consider and determine the letter to be a notice

of recall or "offer of work". The testimony adduced before the Commission, after the case was remanded for the purpose of taking further evidence, clearly established the letter to have all the elements of an "offer of work". ·

██ Since the father refused delivery of this communication when the Post Office employee sought to make delivery, the communication did not come to the attention of Claimant, so he cannot contend he was misled or that he was deceived by its contents and suggest that he did not respond to its directions because of the language used in the letter.

██ The Appeals' Referee and the Commission both held there was no fault shown on the part of the Employer in evidencing its desire to recall Claimant to work by an "offer of work". I agree. The Employer adopted a reasonable method, *i.e.* the facilities of the United States Postal Service, to make an "offer of work" to Claimant, see *Miele v. Unemployment Compensation Board of Review*, 1953, 174 *Pa. Super.* 203, 99 *A.* 2d 907, and the means utilized were effective, as is shown by the record, since it reached the last known address of Claimant on the Employer's records. The only reason it was not wholly effective was the apparently unwarranted refusal on the part of the father of the Claimant to accept delivery.

I, therefore, affirm and sustain the holding of the Appeals' Referee and the Commission in this respect.

██ I agree with Claimant that there is no evidence to sustain the Commission's holding that the father was Claimant's agent and Claimant is foreclosed for such a reason. This, however, is wholly unimportant and cannot alter the result, since the Employer did all that was necessary to endeavor to get notice to Claimant that he was recalled for work by an "offer of work" as that concept is used in the statute.

The legal precedents on which I have based my conclusions are 2 *Merrill on Notice* (1952 Ed.) § 836, page 347; *McCoy v. Bureau of Unemployment Compensation Commission*, 1947, 81 *Ohio App.* 158, 77 *N. E.* 2d 76, 78 (in which case the Ohio Court emphasized that claimant's failure to get her benefits "did not result from any default on the part of" the employer); see also *Welch v. Keeran*, 1943, 233 *Iowa* 499, 7 *N. W.* 2d 809; *Currie v. Gough, et al.*, 1935, 26 *Pa. Dist. & Co.* 627; *Saffold v. Fellows*, 1927, 219 *App. Div.* 865, 221 *N. Y. S.* 197; *Plainfield Motor Co. v. Salamon*, 1935, 180 *A.* 428; 13 *N. J. Misc.* 570, and *People ex rel. Koelsch v. Rone*, 1954, 3 *Ill.* 2d 483, 121 *N. E.* 2d 738.

These authorities support the conclusion that if a reasonable method of getting notice to a person has been adopted and the notice is not received through no fault of the person giving the notice, but by reason of some act or inaction on the part of a person or persons having some relationship to the person for whom the notice is intended, a Court will uphold the effect and consequences of the notice, notwithstanding it may not have been received by the person to whom it was addressed.

In *Christensen Engineering Co. v. Westinghouse Air B. Co.*, 2d *Cir.*, 1905, 135 *F.* 744, 777 there is an interesting discussion by the Court of the use of the Post Office facilities as constituting a reasonable method of getting notice to a person. In that case, notice had been sent to a litigant, addressed to its attorney, of an application for contempt proceedings, in an injunction case. The attorney refused to accept delivery of the notice, which had been sent registered mail, and sought to justify such refusal by contending "they are not authorized to accept service of process or other papers in criminal contempt proceedings". The District Court brushed aside such

a contention. On appeal the Court of Appeals observed (135 *F.* at page 799):

"\* \* \*. If the defendant chose to refuse to receive the registered letter which had been sent to it, it was in no better position to raise the objection which has been urged than a party would be who had concealed himself to avoid service. \* \* \*."

In the case, *sub judice*, it is safe to assume that Claimant's father was aware his son had been laid off, and since he was accepting the benefits of the Unemployment Compensation Act, he would be subject to the duties and responsibilities set forth therein. Claimant's father was free to refuse delivery of a communication, sent by certified or registered mail, if the communication was addressed to him. It is obvious from the envelope in which the October 14, 1960 communication was enclosed, that it was addressed to and sent to and intended for Claimant. The envelope was clearly addressed— "Mr. G. H. Jewell, Jr.". The envelope showed that it was sent from "Emp. Dept. Car and Truck Assembly Group, Chrysler Corporation, Delaware Assembly Plant, Newark, Delaware". It is quite difficult to comprehend why Claimant's father would think that the letter was meant for him. In view of the clear address on the envelope, the father had no authority to refuse delivery. Hence, I consider the reasoning set forth in *Christensen, supra,* is applicable, and regardless of any agency theory. The failure of Claimant to receive the envelope, sent certified mail, with the October 14, 1960 communication enclosed, can in no way be traced to the Employer; the fault was wholly within the Claimant's household, and the consequences of the father's action must be borne by Claimant.

An order providing for dismissal of the appeal and the affirming of the Commission's holding may be submitted.