RALPH P. JOHNSTON, Appellant, v. CHRYSLER CORPORATION, a Delaware corporation, and ALBERT STETSER, WILLIAM BODENSTEDT, HOMER H. PEPPER and WILBERT RAWLEY, composing the Unemployment Compensation Commission of the State of Delaware, Appellees.

(*February* 19, 1962.)

SOUTHERLAND, Chief Justice; WOLCOTT, Justice, and TERRY, President Judge, sitting.

*William T. Lynam, III*, for appellant.

*Joseph H. Geoghegan* (of Berl, Potter and Anderson) for appellees.

Supreme Court of the State of Delaware, No. 41, 1961.

WOLCOTT, Justice (for the majority of the Court).

This is an appeal from a judgment of the Superior Court affirming a denial by the Unemployment Compensation Commission of benefits to the claimant. The ground upon which benefits were denied was that the claimant had disqualified himself under 19 *Del. C.* § 3315(3), by his refusal to accept an offer of work.

Claimant, an unmarried man, was employed by Chrysler at its Defense Plant, Newark, Delaware, continuously from October 25, 1957 to September 28, 1960, when he was laid off because of lack of work. At the time of the layoff claimant was living in the vicinity of Newark, but several days thereafter moved back to the home of his parents in Berwick, Pennsylvania, approximately 135 miles distant from Newark. At the time of his layoff and at the time of the receipt by him of a notice to report for interview, claimant owned an automobile presumably available for use by him to travel between Berwick, Pennsylvania, and Newark, Delaware, to be interviewed.

On October 14, 1960 Chrysler's Employment Supervisor at its Assembly Plant at Newark (not the Defense Plant) mailed to claimant at Berwick the following notice:

"Report to the Employment office for interview at 9:30 A.M., Tuesday, October 18, 1960. Please bring * * Social Security card and this card with you."

Claimant, at the time of his layoff, was a member of the United Automobile Workers of America, which had a work contract with Chrysler. Under this contract Chrysler was required to offer work in its Assembly Plant to its former Defense Plant employees before it hired any new employees from the street. As a former employee of Chrysler at its Defense Plant and as a member of the Union, claimant is charged with knowledge of this work contract and its provisions. Claimant, however, failed to report for the interview.

At the time the notice was sent to claimant Chrysler was increasing the number of employees at its Assembly Plant, and if claimant had reported for the interview he would have been offered a job of the type performed by him at the Defense Plant and with probably no reduction in pay. The precise nature of the job which would have been offered him is not specified in the record.

At the hearing before the Referee claimant testified that he did not report for his interview for the reason that he knew the employees at the Assembly Plant had not been working a full five-day week, and that he could live better at his parents' home even though employed in that area at less pay than he could working for Chrysler for less than a full five-day week. He further testified that he would not work at Chrysler's Assembly Plant unless he had reasonable assurance of working a 40-hour week. He further stated that Chrysler should have made him a job offer at the time of his layoff rather than permit him to move and then call him back. He described this action as "unreasonable".

Claimant, in a letter to the Commission prior to his hearing before the Claims Deputy, stated that he intended to reside permanently at Berwick, Pennsylvania, and that he was actively seeking employment in that area. It appears that he had applied for any type of work to fourteen different possible employers in the Berwick area, but it does not appear from the record what the employment possibilities of that area were.

The first hearing on the right of claimant to unemployment compensation was before the Claims Deputy who ruled that claimant had not refused an offer to work and was therefore entitled to benefits. Chrysler appealed to the Appeals Referee who heard testimony and held that claimant had refused an offer of work and was therefore disqualified for benefits. Claimant thereupon appealed to the Commission but failed to appear at the hearing. The Commission affirmed the decision of the Appeals Referee denying benefits, and the claimant appealed to the Superior Court which, without opinion held, presumably on the authority of *Jewel v. Stetser, Del. Super.*, 174 *A.* 2d 31 (now pending before us on appeal) that claimant was disqualified for benefits because he had refused an "offer of work" within the meaning of 19 *Del. C.* § 3315 (3).

One question only is presented for our decision, *viz.*, is the claimant disqualified for benefits because his refusal to appear at Chrysler's employment office for interview in response to the notice sent and received by him is to be regarded under the statute as the refusal of an offer of work?

By 19 *Del. C.* § 3314, an unemployed individual becomes eligible for benefits under the statute if he has registered for work, has made a claim for benefits, is able to work, is available for work, and is actively seeking work. These statutory requirements must be met as conditions precedent to the receipt of any benefits under the statute.

Once this eligibility has been established it may be lost, however, if any of the disqualifications of 19 *Del. C.* § 3315 are found to exist. One of these disqualifications, that of 19 *Del. C.* § 3315(3), concerns us in this appeal. That sub-section disqualifies a claimant for benefits "if he has refused to accept an offer of work for which he is reasonably fitted."

We assume that this claimant has satisfied the eligibility requirements of 19 *Del. C.* § 3314. No argument has been made before us that such is not the case, although we are not so clear that the claimant's refusal to come to Newark for the purpose of interview knowing that it would result in the offer of a job might not be argued to be an indication that the claimant was not satisfying the requirement of 19 *Del. C.* § 3314(3) that he be "actively seeking work". We pass the point by, however, since it has not been raised.

Our question is whether, under the circumstances, the notice sent claimant was an "offer of work" within the meaning of 19 *Del. C.* § 3315(3). On its face, of course, the notice is nothing more than a direction to the claimant to report to Chrysler's employment office for interview. It does not refer to a particular job, to rate of pay, hours of work, or to the other conditions of employment. We would suppose, there-

fore, that none would disagree that, alone, the notice did not in a legal sense constitute an "offer of work".

But this notice did not stand alone. Of prime importance is the fact that throughout the period in question there was in existence a work contract between Chrysler and the United Automobile Workers, a Union of which the claimant was and, we presume, is a member. As such, he is charged with notice of the existence of the contract and of its provisions.

A copy of the work contract is not in the record before us. It is, however, a matter of conmmon knowledge that work contracts entered into between employers and an industry-wide Union customarily fix working conditions, rates of pay, hours of work, seniority among employees, and many other matters as between employer and employee. Indeed, by definition, these are the matters embraced within a collective bargaining or work contract between employer and the Union. 31 *Am. Jur., Labor*, § 90. This being so, the general nature of the existing work contract between Chrysler and the claimant's Union is a proper matter for judicial notice. 20 *Am. Jur., Evidence*, §§ 16, 18, 27.

Furthermore, in *Jewell v. Stetser, supra,* now pending before us on appeal, involving a claim for unemployment brought by a fellow worker of this claimant who was laid off at the same time and recalled in the same manner by Chrysler on the same day, the general nature of the work contract between Chrysler and the Union is spelled out more fully in the testimony. From the record in the *Jewell appeal* it is apparent that the work contract in question covered the matters commonly known to be covered by such contracts. The facts of the Jewell case were referred to in the argument before us in this appeal. We think there is no doubt but that we may judicially notice those facts. *Wilmington Parking authority v. Burton, Del.,* 157 A. 2d 894.

We think the fact to be, therefore, that the contract between Chrysler and the Union, generally speaking, covered working conditions, rates of pay, hours of work, seniority, and many other related matters. It is immaterial for the purposes of this appeal what the precise provisions were. The important fact is that those matters were all governed by the contract provisions.

All of these contract provisions were known to the claimant, or at least he is chargeable with knowledge of them. Furthermore, from the claimant's own testimony before the Referee it is clear that he realized the notice sent to him by Chrysler was sent pursuant to the requirements of that contract, and that if he responded to it he would no doubt be offered a job. He further knew that at this time Chrysler was engaged in hiring additional employees, both from friends and a brother-in-law who worked at the Assembly Plant in Newark.

We think the conclusion inescapable that claimant knew upon receipt of the notice to report for an interview that he was being offered work by Chrysler. To be sure, he did not know the precise job being offered him, but that he could have learned by reporting for the interview. If, at the interview, the job offered was reasonably fitted, he would thereupon be obligated to accept it or bear the consequences under the statute of having refused work.

In a general or broad sense, therefore, we think the notice sent by Chrysler to claimant, under the circumstances of this case, was an offer by Chrysler to the claimant, not of a specific job, but of work, the precise nature of which would be known later. Whether or not claimant would have been obligated to accept the job offered depends, of course, upon its nature and whether he was reasonably fitted for it. Claimant, however, rejected initially what he should have realized was a general offer to take him back into Chrysler's employ.

We think Chrysler could hardly have been expected to do more than it actually did. From the testimony in this and in the *Jewell appeal*, it is established that Chrysler at this time was recalling to its employ in the Assembly Plant a number of its laid-off employees of its Defense Plant. To require of Chrysler in its notice to each of such employees a detailed specification of the precise job offered to each would obviously require of Chrysler an impossible burden. The amount of paper work required, to say the least, would be burdensome.

Furthermore, we ask, what would be the effect of the refusal on the part of one such former employee of a particular job which might well be the most desirable one available?

From the testimony in the record the inference is that under its contract Chrysler would then be required to offer that job to the next employee in line, and so on, in order of seniority. Upon such a refusal would Chrysler be required to mail out a second and amended offer of a job to each former employee? We think 19 *Del. C.* § 3315(3) does not contemplate a never-ending series of offers of work if for no other reason than that such would be in the highest degree impracticable.

It is suggested that upon receipt of the notice, because of the lack of information contained in it, claimant could not possibly know whether or not he was reasonably fitted for the work offered. This suggestion ignores the requirements of the contract between claimant's Union and Chrysler but there is still another answer to the suggestion. Claimant could readily have found out whether or not he was reasonably fitted for the work offered him by reporting for interview as directed. At that interview all questions of suitability and the other matters of sub-sections (3), (A), (B), (C) and (D) which, under certain circumstances, remove the disqualification of a refusal of work, could have been determined.

We are not dealing in this case with a notice received by a claimant to report for interview sent him by an employer with whom he had no former connection. This notice was sent by his last employer required by contract to rehire him before any nonformer employee was hired. It might well have resulted that the final offer of a precise job would not have had to be accepted by the claimant because of the exceptions of 19 *Del. C.* § 3315(3), (A), (B), (C) and (D), but claimant by his flat rejection of Chrysler's notice has precluded inquiry into this.

We have been cited to no decision in any jurisdiction, nor have our own researches brought one to hand, precisely in point on the question of whether or not under these circumstances Chrysler's notice to claimant was an offer of work, with the possible exception of *Jewell v. Stetser, supra.* That case, now pending on appeal before us, however, was decided primarily on the basis that the claimant in it, through no fault of Chrysler, had not received the notice. In that case, without discussion or analysis, the notice was assumed to be an offer of work.

*Muncie Foundry Division of Borg-Warner Corp. v. Review Board,* 114 *Ind. App.* 475, 51 *N. E.* 2d 281, is not in point. In that case the plant at which the claimant had worked before his layoff had been sold and its contract with the Union of its employees cancelled. Thereupon, the purchasing corporation posted a notice at the plant to the effect that within certain dates the plant office would be open to receive applications for employment. Upon this, a labor dispute arose between the purchaser and the employees of the former owner concerning rates of pay and the plant was picketed. The dispute was ultimately settled and many of the former employees of the first owner went back to work. Approximately 195 employees of the former owner, however, filed claims for unemployment benefit covering the period of the labor dispute. The claims were resisted on the ground

that claimants had refused an "offer of work" thus disqualifying themselves. The court rejected the argument, holding that the posting of a notice that applications for work would be received was not the making of an offer of work.

The *Muncie case* is obviously not the same as that at bar. The Muncie employees were not being recalled to work by their former employer pursuant to the terms of an existing contract with the Union which required it to do so, and which further spelled out hours of work, rates of pay and working conditions.

It seems possible that had there been in existence at the time a contract of employment with the claimant's bargaining agent the result in the *Muncie case* might have been different if the subsequent decision of the Appellate Court of Indiana, in Banc, in *Mouldings Division of Thompson Industries v. Review Board*, 122 *Ind. App.* 497, 106 *N. E.* 2d 402, properly reflects the opinion of the Indiana court. In that case the dispute was as to the adequacy of the mailing of a notice with the employer contending it had been mailed as required by the bargaining contract. The court said that the argument would have been sound if the contract had so provided, but that no such requirement was to be found in the contract.

The case of *Frigidaire Division, General Motors Corp. v. Board of Review, Ohio Com. Pl.*, 97 *N. E.* 2d 96, more nearly approaches the circumstances of the case before us. In that case a claim was filed by a former employee who voluntarily left his job for other seasonal employment. When it ceased he applied for benefits. Upon notice of this the former employer wrote claimant informing him that his experience indicated he would be fitted for jobs then available but claimant made no move to go to work for his former employer. The claim was denied primarily on the basis that claimant had failed to prove earnings within the statutory minimum in order to avoid the consequences of having volun-

tarily quit his employment, but, nevertheless, from the syllabi and the opinion of the case there is obviously approval of the view that the letter from the former employer to the claimant constituted an offer of work to him.

In *Glen Alden Coal Co. v. Unemployment Compensation Board of Review*, 160 *Pa. Super.* 379, 51 *A.* 2d 518, the claimant's former employer wrote him offering him work. This letter complied in all respects with the departmental rule except that the unit of work, rate of pay and working hours were not stated. The Board of Review held this not to be an offer of work, but on appeal the ruling was reversed. The court stated that when both parties are subject to a collective bargaining contract which provides for wages, working conditions and practically all conditions of employment, it is at least arguable whether exact notification to the employee is required. The decision did not rest on this ground since the claim was ultimately denied on the ground that claimant had demonstrated that he did not sincerely wish to return to his former employment, but it is quite apparent that if required to do so the court would have held the employer's letter to be an offer of work. See, also, *Sweeney v. Unemployment Compensation Board of Review*, 177 *Pa. Super.* 243, 110 *A.* 2d 843.

None of the cited cases is precisely in point on the narrow question before us. But all of them demonstrate that in applying the Unemployment Compensation Law the courts should not do so by adhering slavishly to a technical and artificial construction of the Law's provisions. The Law was enacted for the benefit of persons unemployed through no fault of their own, who also are sincerely co-operating to end their unemployment. To allow the claim now before us would be a violation of this precept. This claimant knew upon receipt of the notice that he had been offered work of an unspecified nature. He also knew, however, that any work offered him must of necessity be in conformity with the bargaining

contract negotiated for his benefit. Under the circumstances, we think he received an offer of work which he summarily rejected. He must stand the consequences of that rejection.

The judgment below is affirmed.

TERRY, President Judge (dissenting).

The disqualifications, if any, on the part of the claimant to receive unemployment compensation benefits must be determined by construing the pertinent provisions of *Sections* 3314 and 3315 of *Chapter 33, Title* 19 *of the Delaware Code* in the light of the record now before this Court.

The pertinent provisions of said sections are as follows:

"§ 3314.   Eligibility for benefits

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the Commission finds that he—

"(1) Has registered for work at, and thereafter continued to report at, an employment office in accordance with such regulations as the Commission prescribes, except that the Commission may, by regulation, waive or alter either or both of the requirements of this subdivision as to individuals attached to regular jobs and as to such other types of cases or situations with respect to which it finds that compliance with such requirements would be oppressive, or would be inconsistent with the purpose of this chapter, but no such regulation shall conflict with section 3312 of this title;

"(2) Has made a claim for benefits with respect to such week in accordance with such regulations as the Commission prescribes;

"(3) Is able to work, and is available for work, and is actively seeking work; * * *.

"§ 3315.   Disqualifications for benefits

"An individual shall be disqualified for benefits—

"* * * (3) If he has refused to accept an offer of work for which he is reasonably fitted, or has refused to accept a referral to a job opportunity when directed to do so by a local employment office of this State or another State * * *."

The claimant in this case commenced his employment with Chrysler Corporation as an Inspector, at its Tank Defense Plant in Newark, Delaware, on October 25, 1957. His employment was uninterrupted until September 28, 1960, at which time it was terminated due solely to the closing down of the plant.

The claimant filed his application for unemployment compensation on September 29, 1960, and thereafter for a few days endeavored, without avail, to obtain employment in the Newark, Delaware area. Not from choice, but because of financial necessity, he moved to and became a resident of Berwick, Pennsylvania, the home of his parents, a distance of 130 miles from Newark, Delaware.

The claimant was able to work, he was available for work, and actively sought work in the area of his Pennsylvania residence, as evidenced by an uncontradicted portion of the record disclosing that he personally applied to fourteen different employers *for any type of work in that area* from October 5, 1960 to October 26, 1960.[1]

---

[1] 1. Berwick A. C. & F. Co., Berwick, Pa.
2. Wise Potato Chip Co., Berwick, Pa.
3. Bana Cigar Corp., Berwick, Pa.
4. Pepsi Cola Bottling Co., Berwick, Pa.
5. Krugs Lumber Yard, Berwick, Pa.
6. Montgomery Ward, Berwick, Pa.
7. Summit Feed Mills, Berwick, Pa.
8. Naugle Lumber Yard, Berwick, Pa.
9. Johnson Chevrolet, Inc., Berwick, Pa.
10. Garmans Department Store, Berwick, Pa.
11. ————— Bakery, Berwick, Pa.
12. Magee Carpet Co., Nescopeck, Pa.
13. Chrysler Defense Plant, Eynon, Pa.
14. Zeiser Vault Co., Nescopeck, Pa.

On October 18, 1960, Chrysler corporation sent to the claimant the following notice: "Report to Employment Office for interview at 9:30 A.M. Tuesday, October 18, 1960. Please bring Social Security card and this card with you." The claimant did not report to Newark, Delaware for the suggested interview for several reasons, two of which are important:

(1) That he resided at the time 130 miles from Newark, Delaware, and

(2) That the notice sent to him was but an invitation to be interviewed for work (not an offer of work for which he was reasonably fitted). Section 3315(3).

The Superior Court, in affirming the Unemployment Compensation Board, held that Chrysler's notice to the claimant "To report to the Employment Office for an interview" was tantamount to an offer of work and since claimant refused to report to be interviewed, that he had refused to accept an "offer of work for which he was reasonably fitted" and thus concluded that he was disqualified from benefits under Section 3315(3).

The majority in affirming the court below assumes without deciding that the claimant is eligible for unemployment benefits under 19 *Del. C.* § 3315(3). Their opinion indicates, however, that they have some doubt as to whether or not the claimant was "actively seeking work" as required by said section. They state as follows:

"We are not so clear that the claimant's refusal to come to Newark for the purpose of interview knowing that it would result in the offer of a job might not be argued to be an indication that claimant has not satisfied the requirements of 19 *Del. C., Sec.* 3314(3) that he be 'actively seeking work'."

I find no logic in the doubt expressed by the majority, especially in the light of the uncontradicted portion of the record revealing the claimant's activities in seeking any type

of employment, first, in the Newark, Delaware area, and then in the area to which he moved, Berwick, Pennsylvania. These facts conclusively establish that the claimant was "actively seeking work."

The doubt expressed by the majority is due to a refusal to recognize that the permanent residence of the claimant is Berwick, Pennsylvania, not Newark, Delaware, and that his employment terminated with Chrysler September 28, 1960.

The Chrysler Tank Plant at Newark, Delaware remains closed, and if the claimant had responded to the notice for interview, it would, of necessity, have had to relate to the possibility of employment in another division of the corporation, and whether or not an acceptable offer of employment would have followed if the claimant had responded falls clearly within the field of speculation and conjecture.

Would the claimant be ineligible for benefits if he failed to report to a notice for an interview from duPont Company or General Motors in Wilmington, Delaware, approximately 130 miles from his residence, or some other corporation, let us say, located in Baltimore or New York City? I do not believe so, and the Legislature never so intended in enacting the Unemployment Statute.

I find no duty whatsoever under the Act for any employee to be available for work in any particular place. *Ashmore v. Unemployment Compensation Commission*, 7 *Terry* 565, 86 *A*. 2d 751. In that case the Superior Court of this State held:

"Moreover, there is no requirement in the Unemployment Compensation Act that a claimant must be available for work in the locality in which he last worked or resided or in any other particular place. Nor is there any requirement that he must be available for his usual type of work. The fact that a claimant has moved from one locality to another does not form a basis for holding him unavailable

for work even if it appears that his chances for employment would have been better if he had remained in his former locality."

It is my conclusion that the claimant was actively seeking employment within the terms of the eligibility requirements of Sec. 3315(3).

Now, the substantive question: Should the Court below be affirmed in its conclusion that Chrysler's notice to the claimant to appear at its employment office at Newark, Delaware, for an interview, was tantamount to an offer of work for which he was reasonably fitted? Sec. 3315(3).

It seems to be unrealistic for anyone to consider that the meager notice sent by Chrysler to the claimant constituted an offer of work for which he was reasonably fitted as contemplated by the statute. How could claimant know he was reasonably fitted for the work since no work was offered? The most that can be made of the notice is to call it a notice for interview.

A case directly in point is *Muncie Foundry Division of Borg-Warner Corporation v. Review Board*, 114 *Ind. App.* 475, 51 *N. E.* 2d 891 (1943). In that case, the plant where claimant was employed was sold and the purchaser posted the following notice:

"This office will be open Monday next week, December 28th, through December 31st, to receive applications for employment." *Supra at* 892.

Claimant filed a claim for Unemployment Compensation. It was argued that claimant should be disqualified for benefits since the offer to submit an application was tantamount to an offer of work.

In affirming the Board's award of compensation, the Court commented:

"The mere offer of the opportunity to file an application for work with possibility of acceptance of the application and the possibility of work to follow such acceptance does not amount to an offer of suitable work."

No "offer of work" within the plain meaning of Sec. 3315(3) was tendered by Chrysler to the claimant herein. To hold otherwise, as did the court below, has the effect of rewriting the disqualification provisions of the section to include a further disqualification, "a failure to report for a notice of interview directed by one other than the Compensation Commission." That such was never intended, is abundantly clear from the language employed under Sec. 3315(3), *i.e., a claimant may be disqualified for benefits if he has refused an offer of work tendered by one other than a State Employment Office, but he may be similarly disqualified if he has refused to accept a referral to a job opportunity when directed to do so by a State Employment Office.*

The notice given to claimant herein is more akin to a referral to a job opportunity, and as stated in said section, it must be given by a State Employment Office.

The majority concede that "on its face * * * the notice is nothing more than a direction to the claimant to report to Chrysler's employment office for interview."

And furthermore that "* * * alone, the notice did not in a legal sense constitute an 'offer of work'."

But in some undefined "general or broad sense" they "think" the notice was an "offer of work".

The crutch which the majority uses to reach their conclusion is the existence of a collective bargaining contract between Chrysler and the United Automobile Workers of which the claimant was a member. It is somewhat surprising that this contract, on which the majority opinion leans so heavily, is not a part of the record in this case. The majority,

however, solves this dilemma by finding the collective bargaining contract a proper subject for judicial notice. And they add that "It is immaterial for purposes of this appeal what the precise provisions were".

The existence of a collective bargaining contract does not change this case at all. If the contract provided that recalls were to be initiated by notice to report to the employment office for interviews and such a provision was shown in the record, this case would be entirely different. Such a contract provision might fill the gap in the reasoning by the majority. But it does no good to recognize the existence of the contract unless "precise provisions" of that contract can support the contentions that a "notice for interview" was "an offer of work".

The majority does not confine its attention to the narrow legal question before us. They include in their opinion a certain discussion of the practicalities of running a modern industry. I do not understand why this Court in ruling on an unambiguous notice in conjunction with the text of an unambiguous statute should enter the realm of business policy. The majority's position in this respect paves the way for turning Sec. 3315(3) into an employer's windfall. For example, if an employer has 25 job openings he could send out 100 vague interview notices to former employees. If 50 former employees came to the interview 25 would be hired and the 50 who did not come to the interview would be found off unemployment compensation. Thus, for an investment of 25 jobs an employer would be able to remove 75 people from its unemployment accountability.

In the present case the majority has taken judicial notice of the facts in *Jewell v. Stetser*, 174 A. 2d 31 (*Del. Super.* 1961). That case involved a former employee of Chrysler who was mailed a notice for interview at the same time as the claimant in the case at bar. The record in that case has not been made a part of the record in this case.

However, the opinion in the *Jewel case* states that Chrysler's representative testified that ten per cent more notices were sent than there were job openings. Thus, in this case Chrysler admittedly sent out more notices than it had job openings, which nullifies the majority's conclusion that the claimant would have been offered work had he responded for the interview.

Since no offer of work was given to claimant by Chrysler, he should not be disqualified for benefits under said section.

The judgment below should be reversed.